FIRST JUDICIAL DISTRICT OF BURLINGTON COUNTY.

MINNIE IANNUZZI, BY HER NEXT FRIEND, PIETRO IANNUZZI, PLAINTIFF, v. H. V. BISHOP, DEFENDANT.

Decided July 16, 1930.

For the plaintiff, *Daniel Lichtenthal*.

For the defendant, *Bennett Clark*, of *Kenworthy Clark*.

MATHEWS, J. This is a suit brought by the plaintiff by her next friend to recover damages done to her property by reason of the negligence of the defendant. The plaintiff's testimony upon the question of liability showed the following facts:

On or about the 12th day of November, 1929, the defendant's automobile truck, after the sound of a crash, was discovered on the front porch of the plaintiff's house. When seen by Pietro Iannuzzi, the husband and next friend of the plaintiff, on the evening of that date, the porch had one of the brackets at the top of the posts knocked down and another one cracked. One of the porch posts was broken on one side. His testimony was that the porch is about twelve feet back from the sidewalk and that the hedge is about a foot wide, that three or four feet of the hedge was down, some of it torn up by the roots and some of it with the limbs broken; that the hedge was about four and a half to five feet high and had been there since he took possession of the property.

He also testified that the curb along Bridgeboro street, in Riverside, which is the street in front of the plaintiff's property, was about eight inches to a foot high. There is further testimony by another witness that he heard the crash and came out and saw the defendant's truck up on the porch with one wheel against the door; that the porch railing was broken; that the hedge was uprooted and broken in a space about six feet wide.

. The balance of the plaintiff's testimony was with regard to the damages done.

The defendant put in no testimony whatsoever, except as to the amount of damages.

The proof of defendant's ownership of the truck was not very strong, but there was sufficient from which such fact could be found.

The crucial point of the case is whether under these circumstances the doctrine of *res ipsa loquitur* applies. Counsel on neither side has been able to submit any direct authority in point one way or the other in this state, and the court has been able to find none.

There are many cases applying the doctrine, so that it unquestionably exists in New Jersey, and the problem is whether it, as laid down, applies to the facts in this particular case.

In *Mumma* v. *Easton, &c., Railroad Co.*, 73 *N. J. L.* 653, the doctrine was applied to a situation where the plaintiff was a passenger in a horse and carriage passing across a highway bridge over the defendant's railroad tracks. At the time there was an engine of the defendant company with no cars attached standing beneath the bridge. As the plaintiff was proceeding over the bridge as aforesaid the engineer suddenly blew the whistle and allowed a quantity of steam to escape from the engine, which came up through the bridge enveloping the horse and carriage. The horse became frightened at the whistle and the steam, ran away and the plaintiff was thrown out of the carriage and injured. In this case the principle of the doctrine was laid down as follows: "This principle is that when through any instru-

mentality or agency under the management and control of the defendant or his servants there is an occurrence, injurious to the plaintiff, which, in the ordinary course of things, would not take place if the person in control were exercising due care, the occurrence itself, in the absence of explanation by the defendant, affords *prima facie* evidence that there was want of due care.

This statement of principle has been followed in several other cases in this state, to wit: *Rapp* v. *Butler, &c.,* 103 *N. J. L.* 512; *Taylor* v. *Berner,* 7 *N. J. Mis. R.* 597 (where the principle is applied to the explosion of a bottle of vichy which had been filled by the defendant); *National Sheet Metal Roofing Co.* v. *New York Telephone Co.,* 5 *Id.* 503.

I have had some difficulty in reconciling some of these cases with regard to the question of whether or not the case should be submitted to the jury, but that question does not need to be considered here, there having been no motion for a direction by the plaintiff. All these cases recognize the application of the doctrine and generally follow the principle as laid down in *Mumma* v. *Easton, &c., Railroad Co., supra.*

It may quite well be, as contended by the defendant although he cites no authority in support thereof, that the mere collision of an automobile with an object, standing or otherwise on the highway, would not be sufficient for application of the doctrine. But that is not the situation here. The proofs in this case establish unquestionably that there was an occurrence which was injurious to the plaintiff, that that occurrence was due to the fact that an automobile truck belonging to the defendant wandered up on the plaintiff's front porch. It seems to me that there could be no clearer occurrence which, in the ordinary course of things, would not take place if the person in control were exercising due care. Certainly an automobile on a highway in the control of a person would not perform these playful antics if such person in control were exercising due care, in the ordinary course of things. It may have been that the mechanism on the truck broke through no fault of the defendant, but this, of course, does not happen "in the ordinary course of things," and it

seems to me that that phrase used by the court means just this. If that, or some other fact not involving negligence on the part of the defendant was the actual cause of the accident, it seems to me that that would be an extraordinary situation, because it is a matter of common knowledge that automobiles and trucks as they are made to-day do not *ordinarily* leave the highway in such a manner, and, if they do, it is the extraordinary and not the ordinary course of things.

There remains the question whether there was an instrumentality or agency under the management and control of the defendant or his servant. There is no direct testimony in the case that the truck at the time of the occurrence causing the damage to the plaintiff was under the control of the defendant or his servant. However, it would seem that the rule in this state which has been applied in numerous cases and appears to be settled is dispositive of that question here, and that is the rule which holds that proof of ownership of the defendant's automobile or truck, without more, upon a public highway, raises a presumption that the automobile or truck was in the possession of the defendant either personally or through his servant. *Mahan* v. *Walker,* 97 *N. J. L.* 304.; *Tischler* v. *Steinholtz,* 99 *Id.* 149; *Sadofsky* v. *Fraim,* 7 *N. J. Mis. R.* 1064; *Lilly* v. *Duckworth,* 104 *N. J. L.* 387.

It would be drawing a hairline distinction with no common sense to support it to say that a different rule should apply when the defendant's truck instead of being upon the highway is upon the plaintiff's front porch, under the circumstances outlined above. It, therefore, follows that the same presumption would arise if the defendant's automobile is found in such a position and hence throw the burden upon the defendant to show that it arrived there without any act of negligence upon his part. There is support by parity of reasoning at least in *Sheridan* v. *Arrow Sanitary Laundry Co. et al.,* 105 *N. J. L.* 608, where it was held that the unexplained presence upon the public highway of a "runaway" truck, without driver or occupant, moving along the highway to the

far side thereof, mounting the curb and doing serious physical injury to a person lawfully there, raises a *prima facie* presumption of negligence on the part of the owner and on the part of the owner's employe in whose charge the car was. In that case there was proof that shortly prior to the occurrence the truck was under the management and control of the defendant's servant, while in the instant case there is no testimony as to who was in charge of the truck or exactly how it reached the plaintiff's porch.

While, of course, negligence is never presumed, nevertheless I feel that the application of these rules under such circumstances as are shown to exist in this case is not violative thereof but in entire accord therewith. I, therefore, find that the truck of the defendant, under his management and control, damaged the plaintiff's property, and that this occurrence in the ordinary course of things would not have taken place if the person in control were exercising due care, and that hence the doctrine of *res ipsa loquitur* applies and there is *prima facie* evidence that there was a lack of due care upon the part of the defendant.

The motion of the defendant for a nonsuit, decision upon which was reserved on the trial, and the motion for a directed verdict for defendant at the conclusion of the trial are both denied; and I find that the damage done to the plaintiff's property were the proximate result of the defendant's negligence.

This leaves remaining only the question of damages. There was testimony that plaintiff's hedge had been uprooted in certain places and branches broken off, but absolutely no testimony as to value. It certainly is the rule that if the defendant by his wrongful conduct causes damages to the plaintiff's property, which damages are impossible of calculation by any fixed and certain rule, the plaintiff is not deprived of his right to recover, but there is no indication in this case that the value of the portions of the hedge destroyed or damaged could not be so fixed, and we, therefore, are not concerned with any question as to the proper method of arriving at such damages other than whether there is a right of the plaintiff under such testimony to recover at all.

In *Teets* v. *Hahn*, 5 *N. J. Mis. R.* 538, involving the question of damages to an automobile, there was proof that the car was a certain kind of car of a certain years model, the amount it cost when new on the installment plan and for cash; that prior to the collision the car was in first-class condition, though it needed paint and looked rough; and further that the condition of the car was such after the collision that it was not worth anything except for junk. The Supreme Court in this case sustained a direction by the trial judge of a verdict of six cents nominal damages for the plaintiff, holding that while all of the above recited facts were elements to be considered by the jury, nevertheless that the proof failed at the critical point, and there being no testimony as to the fair value of the car when wrecked such direction was proper. The Court of Errors and Appeals (104 *N. J. L.* 357) reversed the Supreme Court and said, among other things: "There was, therefore, sufficient evidence which required the trial judge to submit the amount of damages sustained by the plaintiff to the determination of the jury." And the opinion further states: "Twelve men of ordinary intelligence sitting in a jury box, after hearing the testimony as to the cost of the car, its description and use and its condition immediately before and after the collision, would be fairly enabled to arrive at the damage sustained, without the aid of expert testimony." The present case, however, differs in the fact that no testimony whatsoever was shown as to the value of the hedge either when new or any other time, nor any other fact concerning value or upon which a jury could base any finding as to the pecuniary loss suffered. Applying what seems to be the necessary effect of the rule above stated, any award for damage to the hedge would be founded upon the wildest kind of guess for which there would be no legal basis.

The testimony of both sides as to the damages to the porch were quite at variance; but considering all of it I find that the amount of damage to the porch was $35.

Judgment will therefore be entered in favor of the plaintiff and against the defendant for that sum, and costs.