MARY ELLEN CHAISSON *vs.* HOWARD S. WILLIAMS.

Kennebec.     Opinion September 2, 1931.

*Locke, Perkins & Williamson,* for plaintiff.
*Robinson & Richardson,*
*Burleigh Martin,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

DUNN, J. The plaintiff, while riding by invitation of the defendant, as a guest in an automobile owned and operated by him, sustained personal injuries.

An exception to the refusal of a directed verdict for the defendant, made at the close of the evidence, and a general motion by defendant for a new trial, seasonably filed after verdict for the plaintiff, raise the same questions. The motion raises, in addition, that the damages assessed by the jury are excessive. Defendant also pursues an exception to an instruction.

The declaration is in two counts.

The gist of the first count is that defendant, notwithstanding he knew that the steering gear of his automobile was not working properly, and that the air pressure in a front tire had become low, yet, unmindful of legally imposed duty to exercise care and prudence for the protection of his invitee, attempted to drive his auto-

mobile rapidly around a highway curve; the automobile, however, being out of control, continued on, and left the road and ran into the woods, and struck a stump, the actionable injury of plaintiff proximately resulting.

The second count alleges that while plaintiff was so riding gratis, and she herself was in the exercise of due care, defendant carelessly, recklessly, and negligently drove his automobile off the road into and among bushes and trees, and against a stump, to the immediate hurt of the plaintiff.

The plea was the general issue.

Only the plaintiff introduced evidence; the defense put in none whatsoever. A general verdict was returned, the assessment of damages being $5,500.00.

The element of contributory negligence, counsel for defendant concede in their brief, is out of the case, because not relied on in the specifications of defense, filed under Superior Court Rule IX.

The accepted invitation was to ride, for pleasure, in the afternoon of November 1, 1930, from Augusta to Jackman, and return. In Augusta, before the start, a garage man installed a new valve in the left front tire of the automobile, a Studebaker of the sedan type. This done, defendant drove, plaintiff sitting beside him, in the direction of Jackman, for approximately three hours, without trouble or mishap.

Plaintiff witnessed that, ten or fifteen minutes before the occurrence of the accident (when, so far as the printed record shows, no one was meeting them on the smooth, tarred-surfaced, but hilly and crooked road, and nothing out of the usual was being done to the automobile), she "thought there was something wrong." "The car," to use her own words, "seemed to be on the left side of the road. I looked at him (defendant) and he seemed to be at ease, and by the time I looked again the car was on the right side, and I didn't think any more about it."

Defendant, so plaintiff's testimony continues, "turned his wheel as he went into the particular curve; we didn't make the curve, but went across the road," and out of the road, and the car hit the stump.

The testimony of two other witnesses, who, traveling in the same direction, in another automobile, arrived shortly at the scene of

the accident, agrees in proving that the automobile of the defendant left the road. On the subject of the cause of the accident, one of the witnesses testified: "Instead of taking the S curve to the right, at the foot of a pitch, the car went straight ahead, and landed in the woods, the bigness of it, against a stump."

The condition of the automobile after the accident is not shown. If the steering mechanism was defective, or the tire partially deflated, or wholly blown out, there is no evidence of the fact.

Plaintiff testified that after the accident, and before she and defendant had been helped from his car, defendant, in answer to her question, "What in the world do you suppose happened?" replied, "It must have been that front tire; it had been bothering a little while." Another witness attested that the injured defendant, on his way to the office of a physician, "said something as to the tire; that he had to fix it, or something," but what the defendant said, the witness said he himself could not recollect.

The defense argues that, recalling the incident of the installation of the new valve, defendant but surmised that the tire in which the valve had been put, went flat, and that his statement had no other basis than conjecture.

It might well be argued that the weight to be given to the testimony was slight, but it is not to be said, as a matter of law, that the testimony was without any probative force.

The defendant spoke about "that tire." This, however, is not all there is in the transcript on the point. Defendant had driven the automobile to the moment of the impact. He told the plaintiff, on the authority of her testimony, that the tire "had been bothering." Inference that, at the crucial curve, a defective tire had counteracted effort to steer the machine, would not have been unreasonable. It was for the jury, aided by the arguments of counsel, and guided by the instructions of the judge, to determine what defendant said, what he meant by what he said, to deduce legitimate inferences, and resolve to what extent, from the standpoint of the likelihood of truthfulness and accuracy, to apply the testimony.

The great question in this case arises, not so much under the first count as under the second count in the declaration, basing right to recover on the general allegation of the negligent, careless, and reckless operation of the automobile.

In most cases of that variety founded upon the averred violation of a legal duty, voluntarily assumed without consideration, the testimony is conflicting; some facts indicating liability, and some pointing to the exercise of proper care. Not so here.

In the instant case, entirely apart from the testimony, under the first count in the declaration, that directly tended to assign default to the defendant for driving the automobile off the road, when he knew, or ought to have known, in time to have prevented catastrophe, that the steering mechanism and tire were not functioning suitably, there was, under the second count, legally sufficient evidence that the defendant failed in the performance of the duty which arose when the plaintiff entered the automobile. *McDonough* v. *Boston El. Ry. Co.*, 208 Mass., 436.

An individual owning or operating an automobile must, for the safety of his guest in the vehicle, exercise in his own conduct, "ordinary care," which is that degree of care that the great majority of legally responsible persons, owing a legal duty to use care, or the type of that majority — that is to say, a person of ordinary intelligence and reasonable prudence and judgment — ordinarily exercises under like or similar circumstances.

No definition of "negligence" can, in itself, be complete without regard to special circumstances, nor be fully understood without the addition of some essential set of facts.

However, for a failure on the part of the owner or operator to exercise ordinary care for the protection of his guest, the guest not having assumed other than the risks and dangers usually or naturally incident to such a mode of transportation, nor having been guilty of contributory negligence, such owner or operator will be held negligent, and liable for the damages between which and such failure, causal connection exists. *Avery* v. *Thompson*, 117 Me., 120 ; *Peasley* v. *White*, 129 Me., 450.

Holding the owner or operator to the standard of ordinary care may tend to prevent inviting guests, but the gratuitous passenger should be entitled, from the owner or operator, to the exercise of some degree of care, for safety in the driving of the car, and that of ordinary care seems fair and just.

The rule adopted in *Avery* v. *Thompson*, supra, was characterized by the Michigan Supreme Court (prior to the enactment in

the state of a different statutory standard, Act No. 19, Public Acts 1929, amending Act No. 302, Public Acts 1915), as reasonable and sane. *Roy* v. *Kirn* (Mich., 1919), 175 N. W., 475. The same rule found application in Kentucky (Ky., 1914), *Beard* v. *Klusmeier*, 164 S. W., 319, 50 L. R. A. (N. S.), 1,000, Ann. Cas., 1915D, 342; in Maryland (Md., 1914), *Fitzjarrel* v. *Boyd*, 91 Atl., 547 ; and in Connecticut, *Dickerson* v. *Connecticut Company*, 98 Conn., 87.

The law imposes on the plaintiff, in an action of this kind, the general burden of proving the material averments of the declaration in his writ, by a preponderance of all the evidence, else his case fail. In a strict sense, this burden never changes, though it may be inferentially aided and sustained ; circumstantial evidence may justify the inference that the defendant was wanting in respect to the exercise of commensurate care.

Such an inference helps this plaintiff.

An automobile host, as has been seen, owes to his guest the duty of exercising ordinary care, not unreasonably to expose the latter to an additional peril, or subject him to a newly created danger. *Avery* v. *Thompson*, supra.

Automobiles, when operated by prudent persons, with reasonable care, do not usually leave the highway, and run headlong into the woods, until stopped by the stump of a tree. When they do, it is the extraordinary, and not the ordinary, course of things.

Where an automobile, and the operation thereof, are exclusively within the control of the defendant, whose guest is injured, and it is not reasonably in the power of such guest to prove the cause of the accident, which is one not commonly incident, according to everyday experience, to the operation of an automobile, the occurrence itself, although unexplained, is *prima facie* evidence of negligence on the part of the defendant. *Res ipsa loquitur*, the thing speaks for itself. The question of the defendant's negligence arises as a matter of law.

It matters little whether it be said, in reference to the situation on such a stage of the evidence, that the thing speaks for itself, or there is some evidence of negligence, or sufficient to shift to defendant the burden of going forward with the evidence, or that the facts are adequate to carry the case to the jury, or that explana-

tion is requisite, because the different expressions mean much the same thing.

*Res ipsa loquitur*, in whatever latitude taken, is a rule of evidence which warrants, but does not compel, the inference of negligence from circumstantial facts. *Edwards* v. *Cumberland County, etc., Co.*, 128 Me., 207. The basic rule that facts in issue are to be submitted to the jury, includes cases where the question is as to the inference to be drawn from such facts.

The doctrine of *res ipsa loquitur* does not dispense with the rule that the person alleging negligence must prove it, but is simply a mode of proving the negligence of the defendant, inferentially, without changing the burden of proof. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff. *Sweeney* v. *Erving*, 228 U. S., 233, 57 Law ed., 815. The doctrine is not to be invoked, it is to be borne in mind, when all the facts attending the injury are disclosed by the evidence, and nothing is left to inference. 20 R. C. L., 188.

The maxim of *res ipsa loquitur* has been applied in cases of injury to invited guests, caused by the operation of automobiles. Huddy on Automobiles, 7th ed., Sec. 512. It has been held as applicable to automobile carriers without reward, as to carriers for hire. *Crooks* v. *White* (Cal., 1930), 290 Pac., 497.

The character of the accident, rather than the fact of accident, decides, as a legal proposition, whether the doctrine applies. *Bryne* v. *Great Atlantic & Pacific Tea Co.* (Mass., 1929), 168 N. E., 540. It is universal knowledge that motor vehicles may skid on slippery roads without fault on account of the manner of their handling, or on account of being there. *Linden* v. *Miller* (Wis., 1920), 177 N. W., 909. Therefore, that injury results from the skidding of an automobile, is not, of itself, evidence of negligence. *King* v. *Wolf Grocery Co.*, 126 Me., 202. But though mere accident is not proof of negligence, some accompanying elemental facts may, under ruling by the court, afford room for the jury to infer that the negligence of the defendant caused the injury.

The doctrine of *res ipsa loquitur* was applied when plaintiff, a guest in defendant's automobile, was thrown therefrom and injured, by reason of the car leaving the road and running into a tree. *Masten* v. *Cousins*, 216 Ill. App., 268. It was applied in

*Rindge* v. *Holbrook* (Conn., 1930), 149 Atl., 231, where the guest was injured in consequence of the automobile running off the road and striking a fence. In that case, exculpatory explanation was that the presence of a bee on the wrist of the defendant temporarily distracted her attention.

The fact, unexplained, that a truck went off the road, and ran against a tree, to the injury of an invitee riding gratuitously, did not, under the rule which obtains in Massachusetts, and a few other jurisdictions, show gross negligence on the part of the defendant. It would, however, says Mr. Justice Field, delivering the opinion of the court, have warranted a finding of ordinary negligence. *Cook* v. *Cole* (Mass., 1931), 174 N. E., 271.

The doctrine was put to use where injury to occupant resulted from driver's loss of control, and consequent collision with poles. *Zwick* v. *Zwick* (Ohio, 1928), 163 N. E., 917. (Petition in error dismissed by Supreme Court, 166 N. E., 202.)

There is support by parity of reasoning in *Iannuzzi* v. *Bishop* (N. J., 1930), 151 Atl., 477, where defendant's truck was found on plaintiff's porch, and in *Sheridan* v. *Arrow, etc., Company* (N. J., 1929), 146 Atl., 191, where a runaway truck, without driver or occupant, moved along the highway to the far side thereof, mounted the curb, and did injury to a person lawfully there. And in *Gates* v. *Crane Co.* (Conn., 1928), 139 Atl., 782, where the wheel of a truck became detached, and struck and injured plaintiff walking on sidewalk.

The overturning of an automobile on a curve warranted inference, in the absence of defects in road or car or other cause, of negligent operation. *Baker* v. *Baker* (Ala., 1929), 124 So., 740. Where parked automobile, with engine stopped, started and rolled down street into a store, the doctrine was pertinent. *Glaser* v. *Schroeder* (Mass., 1929), 168 N. E., 809. The mere fact that an auto truck swerved from the street to the sidewalk, to the injury of a pedestrian, was some evidence of the negligence of the operator. *Rogles* v. *United Rys. Co.* (Mo., 1921), 232 S. W., 93. The rule was held to establish *prima facie* evidence of negligence, where it appeared that defendant's truck was suddenly diverted without warning, from the street onto the sidewalk, and struck one standing thereon. *Brown* v. *Des Moines Bottling Works* (Iowa, 1916), 156 N. W., 829, 1 A. L. R.,

835. Negligence was inferred, in New York, where defendant ran his automobile into a pedestrian on the sidewalk. *Green* v. *Baltuch*, 191 N. Y. S., 70. The fact that an automobile rolled down an embankment afforded instance to apply the doctrine. *Hamburger* v. *Katz* (La., 1928), 120 So., 391.

Where a truck, which was being operated by the owner along a street, left such street, and collided with and damaged an adjoining building, and no other testimony was adduced to prove negligent operation of the truck, the *res ipsa loquitur* doctrine applied, and, in the absence of an explanation on the part of the defendant, showing due care in the operation of the truck, it was not error for the trial court, hearing the cause without a jury, to render judgment against the defendant. *Scovanner* v. *Toelke* (Ohio, 1928), 163 N. E., 493, 64 A. L. R., 258n.

It was held, in California, that in the absence of testimony to show the cause of, or reason for, a truck running upon the sidewalk, there was no other inference for the jury to draw except that the defendant's negligence caused the plaintiff's injuries. *Goss* v. *Pacific Motor Co.* (Cal., 1927), 259 Pac., 455.

The case at bar is distinguishable from that of *Waters* v. *Markham* (Wis., 1931), 235 N. W., 797, relied on by defendant. There, one of the tires evidently blew out when the automobile was traveling in the center of the road. Judgment for plaintiff, a gratuitous passenger, was reversed because the issues were not properly tendered to the jury. "If it were not for the blow-out," reads the opinion, "the physical evidence of the course and antics of the car might furnish an inference of excessive speed." The effect of the whole evidence, was the view of the Court, might have been very different than bare proof of the happening of the accident.

In *Klein* v. *Beeten* (Wis., 1919), 172 N. W., 736, another case relied on by defendant, the evidence leaving it open to conjecture whether the accident was caused by negligent driving, or by the blowing out of the tire, judgment adverse to plaintiff was affirmed.

In the present case, where the allegation of the second count is not so specific as to preclude reliance on *res ipsa loquitur*, the question of the negligence of the defendant was a proper one for the jury, and the finding of liability in such connection is not disturbable.

The judge in the trial court instructed the jury, in substance, if it found that, at the time of the accident, defendant was experiencing trouble in the operation of his car, and knew, or as a reasonable man, should have known, that the cause was a gradual leaking of air from the tire, and did not stop his automobile and ascertain the trouble, and remedy it if possible, the jury "would have a right to infer that that was the cause of the accident."

If, as defendant maintains, the instruction was erroneous, it was but partly erroneous, and other instructions, constituting the rules of law and duty for the government of the jury, appear to have been so full and clear as to exclude conclusion that the jury may have been led into error.

Furthermore, the instruction did not go to the unexplained running of the automobile off the road, and to the inference which the application of the doctrine of *res ipsa loquitur* might warrant.

The error, if any, was nonprejudicial.

The remaining question for consideration is that of damages. The jury awarded the plaintiff $5,500.00. She was thirty-nine years old, husbandless, had an earning power as clerk and stenographer, of twenty dollars a week, and besides, kept one boarder.

She incurred serious injury (fracture and other) to the bones of her left arm, involving mobility of the wrist joint, and suffered much pain for six weeks immediately following the accident. A remedial operation, performed at that time, partially restored function and reduced pain; but there is testimony that rotation is impaired, permanently, to the extent of forty per cent, and that movement of the wrist is painful.

At the trial, plaintiff testified she could not turn a doorknob or a faucet, carry anything in her hand, put her hand flat, use her hand in wringing clothes in washing, and that her efficiency as a typist had been lessened.

On the upper aspect of her wrist is a scar, occasioned by necessary surgery, two and one-half inches in length, and, at one place, a half-inch wide. A healed but still disfiguring cut, sensitive in cold weather, extends from her lip towards the corner of her chin, "quarter way down." Three upper teeth, starting from the median line, were crushed and are gone. The teeth, according to the testimony, were sound, regular in shape, and of good color. Her back,

and left shoulder and knee, were bruised and lamed. Nervous shock, that intangible yet nevertheless oftentimes very real thing, is apparently an affliction of the plaintiff.

Actual loss of time was but five weeks, plaintiff's position having been held for her.

Expenditures, concededly reasonable in amount, for dental and medical care, and for nursing, were $914.50. Plaintiff may require, though not immediately, further dental treatment. It is possible, a surgeon gave evidence, that an operation, at some future time, might improve the condition of the wrist.

The award of damages, all the members of the court agree, is large.

The majority of the Justices, while realizing it is difficult to say in such a case what amount of compensation is just, and that if an error is made, it perhaps should be made in favor of the plaintiff, are none the less of the opinion that the verdict is higher than is justified by precedents.

These Justices feel that a verdict of four thousand dollars, or fifteen hundred dollars less than awarded by the jury, would be reasonable.

Excessiveness of damages, not attributable to appeals to passion and prejudice, is not regarded as an unconditional ground for setting aside the verdict, because it may be cured by remittitur. If the plaintiff will, within fifteen days from the filing of rescript, enter her written consent to the reduction of the verdict to four thousand dollars, the motion for a new trial will be overruled. If the said reduction is not consented to within said period, the motion for a new trial will be sustained, but on no other ground than that the damages are excessive. On the new trial, if there is one, the issue is to be limited to the extent of the wrong inflicted upon the plaintiff.

*Exception overruled.*
*Motion overruled, excepting as to damages. Touching damages, if remittitur of $1,500.00 is filed within 15 days from the filing of rescript, motion will be overruled; otherwise sustained.*