EDWARD F. DEOJAY *vs.* KENNETH E. LYFORD.

Androscoggin.    Opinion, November 13, 1942.

*Brann, Isaacson & Lessard,*

*Frank T. Powers,* for the plaintiff.

*John G. Marshall,*

*George C. & Donald W. Webber,*

*Frank W. Linnell,* for the defendant.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, JJ.

THAXTER, J. After a verdict for the plaintiff, this case is before us on the defendant's motion for a new trial and on exceptions. We shall consider only the motion.

The plaintiff was an employee of the Works Progress Administration which was doing certain construction work at the Lewiston & Auburn Airport. Stationed at the junction of two runways, he was charged with the duty of flagging trucks operating there if an airplane was about to land. The defendant was the operator of an airplane which in landing struck the plaintiff who received severe injuries for which he seeks to recover in this action. The negligence of the defendant is set forth in the writ in the following language:

"6. That while your said plaintiff was in the exercise of due care and caution, in the performance of his duties as such flagman, stationed in a position of safety, the said defendant, unmindful of his duties aforesaid, did carelessly, negligently and recklessly guide and operate said aeroplane; did carelessly, negligently and recklessly fail to have said aeroplane under proper control so as to be able to keep the same on the macadamized part of said runway; and did further carelessly and negligently fail to have the same under such control as to be able to bring the same to a stop without colliding with persons or objects on, or in the vicinity of, said runway; whereby said aeroplane collided with the person of your said plaintiff."

The essential facts are not in dispute. The accident took place at or near the intersection of runways 3 and 4. Runway 3 ran northeast and southwest, runway 4 at right angles to it

northwest and southeast. Trucks loaded with gravel were crossing the runways at this intersection and the plaintiff with a red flag signalled them to stop when a plane was about to alight. He was stationed beside a barrel located about twenty-five feet southerly from the intersection of the macadam part of each runway. He was on what was known as the safety band. Each runway was 500 feet wide, and consisted of a hard surface strip 100 feet wide, on each side of which was a gravel strip 200 feet in width, the purpose of which was to give additional room to aviators in landing and taking off. The width of 500 feet is a standard set by the Civil Aeronautics Authority. Milton V. Smith, an experienced aviator, testifying for the defense, said that it was quite common for airplanes in landing to go off the hard surface of the runway onto the safety bands. The defendant was a student pilot who had had several hours of solo flying. At the time in question he was flying alone. Preparing to land on No. 3 runway, he approached from the northeast against a gentle southwest wind which was then blowing. The record does not indicate that his speed was excessive or that there was anything wrong about his handling of the plane at the time of landing. He struck the macadam portion of No. 3 runway about 200 feet northeasterly of the intersection and about 300 feet from where the plaintiff was standing. The plane bounced several times, and on the last bounce veered toward the place where the plaintiff was stationed. As it approached him, he turned and attempted to run away from it in a southwesterly direction. It is not altogether clear that he ran toward the macadam portion of the No. 3 runway, as testified to by the defendant, or that if he had remained where he was the defendant could have avoided him. In any event, the jury were warranted in finding as they did that he was not negligent in his attempt to escape from what seemed to him an imminent danger. The defendant testified that in the effort to avoid the plaintiff he did a ground loop swinging sharply to the left. As the plane swung, however, the plaintiff was struck by some part of the tail assembly and severely injured.

The action is based on negligence. There being no applicable statute governing the liability of the owner or operator of aircraft under such circumstances as these, the rules of the common law as to negligence and due care control. *Wilson* v. *Colonial Air Transport, Inc.*, 278 Mass., 420, 180 N. E., 212, 83 A. L. R., 329; *Greunke* v. *North American Airways Co.*, 201 Wis., 565, 230 N. W., 618, 69 A. L. R., 295. It is claimed that the defendant was negligent in landing his airplane at a point on runway No. 3 where men were at work, and secondly that the doctrine of *res ipsa loquitur* is applicable to the facts here involved.

As to the first point, every inference to be drawn from the evidence is that the defendant was landing at the particular place where he was supposed to land. He did not have latitude in picking any particular spot. He was restricted by the position of the runways, by their condition, and above all by the direction of the wind. The position of the flagman at the particular intersection is strong circumstantial evidence that planes were expected to cross there as they might alight. There is no affirmative evidence that any other place was available or that conditions elsewhere would have been any safer.

The fundamental contention of the plaintiff pressed in oral argument is that the doctrine of *res ipsa loquitur* applies and that this case is governed by the decision in *Chaisson* v. *Williams*, 130 Me., 341, 156 A., 154. This is clearly indicated by the following statement in the plaintiff's brief:

> "The plaintiff at the time of the accident had no means of knowing what occurred to cause the defendant to operate the plane off the runway on to the safety band in his direction. Under these facts and circumstances, after the plaintiff had presented all of the evidence of which he had knowledge concerning the occurrence of the accident, it became necessary for him to invoke and claim to recover under the doctrine of re ipsa loquitur."

The mere fact of the happening of an accident is not evi-

dence of negligence. In certain classes of cases, however, the character of the accident may be such as to impose on a defendant the burden of an explanation. This is the doctrine of *res ipsa loquitur,* the thing speaks for itself. *Chaisson* v. *Williams,* supra; *Winslow* v. *Tibbetts,* 131 Me., 318, 162 A., 785; *Shea* v. *Hern,* 132 Me., 361, 171 A., 248. The limitations of the rule are set forth in *Winslow* v. *Tibbetts,* at page 322 as follows: "The rule does not apply unless the unexplained accident is of a kind which does not, according to the common experience of mankind, occur if due care has been exercised. The basis of the inference is the doctrine of probabilities. Facts proven must, in their very nature, indicate such an unusual occurrence as to carry a strong inherent probability of negligence. Mere conjecture and surmise will not suffice."

The doctrine was held applicable in *Chaisson* v. *Williams* where the evidence showed that an automobile ran off a highway and into a tree. "Automobiles," said the court, page 346, "when operated by prudent persons, with reasonable care, do not usually leave the highway, and run headlong into the woods, until stopped by the stump of a tree. When they do, it is the extraordinary, and not the ordinary, course of things."

And in *Shea* v. *Hern* on a similar state of facts it is said, page 366: "If the jury discovered no specific act of negligence, they had the right to infer it from the circumstance that the car was driven off the road."

Counsel in their brief assume that the facts in the present case require the application of the same doctrine. They say: "If we accept the theory as laid down in *Wilson* v. *Colonial Air Transport,* Inc. (supra) it would seem that the rule governing cases in which automobiles leave the road are analagous to the present situation. We must, therefore, conclude that the macadam portion of a runway is similar to the macadam portion of a highway."

We cannot accept counsels' conclusion. The reasons which justify the application of the doctrine of *res ipsa loquitur* to the case of an unexplained accident in which an automobile leaves

the highway do not apply to the case of an airplane which in landing swerves from the hard surfaced portion of the runway. The very fact that safety bands 200 feet in width are a part of the runway is a recognition that deviations from the 100 foot strip in landing are incidental to the operation of such aircraft. To a certain extent an airplane as it glides to its landing place is out of control. It is subject to the law of gravitation and more or less to the caprice of wind and weather. Variations from what might be called a perfect landing are common. An automobile driven along the highway is, except in exceptional instances, within the control of the driver. He may reduce speed or he may stop altogether with no untoward results. To say that the same rules are applicable to an airplane landing on a runway as to an automobile being driven on the highway is to ignore the well known differences between the two instrumentalities. The expert who testified in the instant case says that it is a common occurrence for an airplane in landing to go off the hard surface of the runway even when handled by an experienced pilot. The justification for applying the doctrine of *res ipsa loquitur* to the case of an automobile which leaves the highway is because such a happening, to reiterate the language of the opinion in *Chaisson* v. *Williams*, is "the extraordinary, and not the ordinary, course of things."

We do not mean to lay down any generalization that the doctrine of *res ipsa loquitur* does not apply to airplane accidents. It has been held that it is applicable to a collision of airplanes in mid air where both machines are operated by the same agency. *Parker* v. *James Granger, Inc.*, 4 Cal. (2d), 668, 52 P. (2d), 226. And negligence was held a question for the jury where the operator of a plane before landing did not wait for another plane which had just alighted to be removed from a runway and a collision resulted. *Greunke* v. *North American Airways Co.*, supra. Neither of these cases is in point. An airplane can be so guided that a collision in mid air does not ordinarily happen without fault, and the operator of the plane involved in the Greunke case did not have to land until the run-

way had been cleared. For a case analogous to the Greunke case, see *Read* v. *New York City Airport*, 259 N. Y. S., 245, 145 Misc., 294.

In spite, however, of the vast advances which have been made in air transport it is still recognized that in all such operations there is a wide element of chance which the ingenuity of man has not yet overcome; and we accordingly cannot apply the doctrine of *res ipsa loquitur* to the same extent as we do to accidents on highways. *Wilson* v. *Colonial Air Transport, Inc.*, supra; *Herndon* v. *Gregory*, 190 Ark., 702, 81 S. W. (2d), 849, 82 S. W. (2d), 244; *Cohn* v. *United Air lines Transport Corporation*, 17 Fed. Supp., 865.

In 83 A. L. R., note at page 369, we find the following statement with respect to the case of *Stoll* v. *Curtiss Flying Service* (1930; N. Y. Supreme Ct. N. Y. County, Trial Term, Part VI): "Where any one of a number of reasons may have been responsible for an aeroplane accident, for some of which defendant carrier would be liable, and for others of which it would not be liable, the jury is not at liberty to guess which caused the accident and attribute it to defendant carrier, but must find for it." This case was affirmed without opinion. *Stoll* v. *Curtiss Flying Service*, 257 N. Y. S., 1010, 236 App. Div., 664.

And in 99 A. L. R., 192, in discussing the case of *State use of Beall* v. *McLeod* (1932; Md. Super. Ct.) we find the following: "The mere happening of an accident raises no presumption of negligence in the operation of the plane; and the burden is upon the plaintiff to establish, by a preponderance of the affirmative evidence, that negligence on the part of the defendant caused the accident."

The truth of the matter is that the facts of each case must be carefully considered, and in the days to come tested in the light of the advances in this art which we are certain to see. A discussion of this subject will be found in Hotchkiss, The Law of Aviation (2 ed.), Sec. 41. The author seems to argue for a wider application of the doctrine of *res ipsa loquitur* than courts have so far seen fit to give. At the same time he admits

that it is beyond the province of the courts to extend the doctrine. He says: "This would change a rule of evidence into a rule of public policy. If the latter is deemed necessary the better way would be to shift the burden by statute."

As there is in the case now before us no direct evidence of any negligence on the part of the defendant, and as no inference of a want of due care arises merely from the happening of the accident, the action cannot be maintained.

*Motion sustained.*
*New trial granted.*