MLK/SC#110-16

STATE OF MAINE                      SUPERIOR COURT
KENNEBEC, ss.                     AUGUSTA
                                    DOCKET NO. CV-12-0244

LAWRENCE A. PRAY,
    Plaintiff


v.                                 **DECISION AND JUDGMENT**


CRAIG MORRISSETTE et. al.,
    Defendants


This matter was tried to the Court on June 30, 2015. After the undersigned has had an opportunity to review his notes taken during the trial, the trial transcript received August 7, 2015, and the post-trial written arguments of counsel received on September 25, 2015, the Court makes the following Findings of Fact and Conclusions of Law upon which the **Decision and Judgment** set forth below is based:

1. This matter involves a complaint for personal injury filed by the Plaintiff Lawrence A. Pray (hereinafter "Plaintiff") on or about September 14, 2012 against the Defendants Craig Morrissette (hereinafter "CM") and Gregory's Disposal (hereinafter "GD") for injuries Plaintiff contends he sustained as a result of CM's negligent conduct occurring on or about January 19, 2009, in Oakland, Maine.[1]

2. On January 19, 2009, CM was driving a garbage truck for his employer GD in a southerly direction on Oak Street in Oakland, Maine, when CM lost control of the truck after driving over what was described as a "frost heave" in the road. This was a "frost heave" that CM was aware occurred every winter generally in the area where the accident occurred. After striking the frost heave the truck's rear end was propelled upward such that it lost contact with the road. CM lost control of the garbage truck. The truck left the roadway, crossing from right to left, and struck a tree, thereafter coming to rest. The roadway was described as covered with slushy snow.

3. At approximately the same time and place Plaintiff was operating his motor vehicle in a northerly direction on Oak Street coming towards CM.

---

[1] At all times relevant hereto CM was an employee of GD acting within the scope of his employment with GD, and thus Plaintiff seeks judgment against GD on *respondeat superior* grounds.

Plaintiff witnessed CM losing control of his truck, leaving the road, and striking a tree. The accident scene is depicted in Defendant's Exhibit 1. The damage to the truck was over $40,000.00.

4. Plaintiff stopped his motor vehicle and got out. Plaintiff called 911 to report the accident and then approached the truck and CM, who at this time was crying out for assistance. Plaintiff had no way of knowing how badly CM was injured, only that CM was crying out for help. Plaintiff described CM as "hysterical" and "freaking out."

5. The truck was resting at an angle on two trees on the truck's driver's side. Plaintiff made his way over to the truck, climbed up on the passenger side, opened the door, and attempted to comfort CM. Plaintiff witnessed blood on CM's head and that CM appeared pinned inside the vehicle. CM asked the Plaintiff to call CM's father, and Plaintiff complied.

6. Three to five minutes after Plaintiff called 911, rescue personnel arrived at the scene of the crash. Plaintiff needed to get out of the rescue personnel's way, and so attempted to do so by jumping down to the ground, a distance the Plaintiff estimated as "three feet or so."

7. Plaintiff slipped when he hit the ground and suffered a badly broken leg.

8. Plaintiff has had three surgeries for injuries sustained as a result of his slip and fall exiting CM's truck. Plaintiff's medical bills total approximately $117,157.80. Plaintiff was 42 years old at the time of his injury.

9. CM has no memory of the Plaintiff being at the scene of the accident. After CM lost control of his truck he realized "it was going to be a bad crash..." and that "I don't want to die..." CM described the road conditions as "extremely bad."

10. A driver of a motor vehicle owes a duty to others to use due or ordinary care under the attendant circumstances. *Reid v. Town of Mount Vernon,* 2007 ME 125. A cause of action for negligence has four elements: (1) a duty of care to another; (2) a breach of that duty; (3) an injury; and (4) causation, that is, a finding that the breach of the duty of care was a cause of the injury. *Estate of Smith v. Cumberland County,* 2013 ME 13, ¶16.

11. The existence of a duty is a legal question, and it is clear that motorists owe a duty of care to others on the roads of our State. *Id.* at ¶17. Whether a person breached his or her duty of care is a question of fact, as is the presence of an injury and whether causation is shown.

12. The Law Court has defined causation as "some reasonable connection between the act or omission of the defendant and the damage which the plaintif has suffered." *McIlroy v. Gibson's Apple Orchard,* 2012 ME 59, ¶8, 43 A.3d at 951. In *Crowe v. Shaw,* 2000 ME 136, ¶10, 755 A.2d 509, the Law Court stated

2

"[e]vidence is sufficient to support a finding of proximate cause if [1] the evidence and inferences that may reasonably be drawn from the evidence indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and [2] that the injury or damage was either a direct result or a reasonably foreseeable consequence of negligence." *Id.; Kimball v. Hower*, 2013 U.S. Dist. LEXIS 118390 (D.Me. 8/21/13).

13. The Court finds CM was negligent in his operation of the truck such that his negligence caused him to lose control of his truck and end up crashing the truck into the tree(s) across the road. The mere fact of the happening of an accident is not evidence of negligence. *Deojay v. Lyford*, 139 Me. 234, 29 A.2d 111. (1942). On the other hand, motor vehicles "when operated by prudent persons, with reasonable care, do not usually leave the highway, and run headlong into the woods, until stopped by the stump of a tree. When they do, it is the extraordinary, and not the ordinary, course of things." *Chaisson v. Williams*, 130 Me. 341, 346, 156 A. 154 (1931). The undersigned finds CM was operating his motor vehicle too fast for the conditions, knew or should have been aware that there were likely to be frost heaves in the road, and CM was otherwise negligent in his operation of his motor vehicle such that he lost control of his vehicle and ended up crashing into a tree(s) on the opposite side of the road.

14. The undersigned finds that it was foreseeable that where a motor vehicle operator, here CM, operates their motor vehicle in a negligent fashion so as to cause a crash and become trapped in the vehicle, and subsequently cries out for help, another person may well attempt to come to their assistance, and get injured themselves as a result of getting involved. The undersigned finds all the elements of negligence present so as to justify a verdict in favor of Plaintiff.

15. Plaintiff also contends that this matter implicates principles set out in the so-called "emergency doctrine" as well as the so-called "rescue doctrine" and that application of these two doctrines support an award of damages for the Plaintiff.

16. The emergency doctrine recognizes that one "who is confronted with an emergency situation is not to be held to the same standard of conduct normally applied to one who is in no such situation." *See* W. Prosser and W. Keeton, *The Law of Torts*, § 33, at 196 (5th ed. 1984). The Law Court has previously described an emergency as "the perplexing contingency or complication of circumstances, in the making or bringing together of which . . . no negligence of the [plaintiff] had to do." *Wing v. Morse*, 300 A.2d 491, 497 (Me. 1973) (quoting *Coombs v. Mackley*, 127 Me. 335, 338, 143 A. 261, 262 (1928)). However, "if there is sufficient time, even though very brief, in which to take deliberate action after being confronted with a perilous situation, the conduct of an actor is not to be judged under the emergency rule," *Hixon v. Mathieu*, 377 A.2d 112, 115 (Me. 1977). The existence of an emergency situation is just another of the circumstances to be considered by the factfinder during its deliberations.

3

17. The undersigned declines to find the emergency doctrine applicable to the facts of this case.

18. Turning to the possible application of the "rescue doctrine" to the facts of this case, the Law Court has never explicitly adopted the principle. *See Bourgeois v. Great Northern Nekoosa Corp.*, 1999 ME 10. On the other hand, at least according to the St. John's Law Review, Volume 57, Issue 4 (Summer 1983), "The rescue doctrine has been recognized in virtually all jurisdictions..." citing a litany of case law across the nation as well as observing that the doctrine was first recognized in Canada in 1910 and in England in 1938. The doctrine was apparently first recognized in the United States in 1871 in the case of *Eckert v. Long Island R.R.*, 43 N.Y. 502 (1871). The principle in support of the rescue doctrine was described by the Law Court in *Michaud v. Great Northern Nekoosa Corp.*, 1998 ME. 213 as: being that when a defendant creates the peril facing a victim, the defendant will be liable to a rescuer for the physical injuries incurred during the rescue attempt because "by negligently creating the peril, a defendant is deemed to have issued an implied invitation to render assistance and responsibility for harm that results from such invitation is assigned to the defendant." *Id.* at ¶19.

19. Defense counsel contends that only the Law Court, not a trial court, may adopt the rescue doctrine. This Court may not abdicate its responsibility for deciding the case before it, however. In this vein, the Law Court has directed that "(i)n the absence of relevant prior decisions, we seek guidance from the Restatement." *Flaherty v. Muther*, 2011 ME 32, ¶83. *The Restatement (Second) of Torts* §445 embraces the rescue doctrine, providing:

If the actor's negligent conduct threatens harm to another's person, land, or chattels, the normal efforts of the other or a third person to avert the threatened harm are not a superceding cause of harm resulting from such efforts.

20. Section 445 of the Restatement also offers the following illustration of the above rule:

A negligently drives a tank truck full of gasoline so that it goes off of the highway and is wrecked. A is knocked unconscious, and the truck catches fire. B, a bystander, attempts to rescue A from the burning truck, and while he is doing so the gasoline explodes, injuring B. A is subject to liability to B. *Restatement (Second) of Torts* § 445, cmt. d, illus. 4 (1965).

21. In addition, the Law Court has often justified its adoption of various rules and doctrines by pointing out that such adoption was in accord with the majority of jurisdictions and authorities. *See, e.g., Motel Services, Inc. v. Central Maine Power Co.*, 394 A.2d 786, 788 (Me. 1978) ("This reading is in accord with the vast majority of other jurisdictions, and with the preeminent authorities."(citing the *Restatement (Second) of Contracts* and *Corbin on Contracts*); *Bernier v. Raymark Industries, Inc.*, 516 A.2d 534, 539 (Me. 1986) (adopting majority approach by explaining that "[a] clear majority of courts, relying on comment J of section

4

402A of the *Restatement [(Second) of Torts* § 402A] have concluded that an asbestos product is not defective unless the manufacturer knew or should have known of the product's danger at the time of distribution"); *MacLeod v. MacLeod*, 383 A.2d 39, 43 n.3 (Me. 1978) (adopting majority approach by explaining that "[t]he majority of jurisdictions, however, are in accord with the *Restatement [(Second) of Conflicts* § 84] view that an alternative forum is not merely a factor in analysis, but rather an essential prerequisite to application of forum non conveniens").

22. Given the above, the undersigned is satisfied that the rescue doctrine should and does apply to the facts of this case. Accordingly, the injuries Plaintiff suffered while assisting CM were a foreseeable result of CM's negligent operation of his motor vehicle. However, the next question that needs to be answered is whether comparative negligence on the part of the Plaintiff is present in the case, and if so how does it impact on what the judgment in this matter should be.

23. Maine's comparative negligence statute reads as follows:

**14 M.R.S. § 156. Comparative negligence:**

When any person suffers death or damage as a result partly of that person's own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage may not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof must be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

24. The undersigned has read many, many cases from across the country as well as various legal annotations regarding the issue of whether comparative negligence applies in a case where the rescue doctrine is implicated, and agrees with the reasoning of the Court in *Pachesky v. Getz*, 510 A.2d 776 (Pa. Super. Ct. 1986) as well as the Court in *Cords v. Anderson*, 259 N.W.2d 672 (Wis. 1977), specifically that if a plaintiff under the rescue doctrine acts negligently in performing a rescue, the relative causal negligence of the parties should be apportioned in accordance with the comparative negligence statute. The undersigned also agrees with the premise set out in *Pachesky* that the rescue doctrine is not subsumed by the law of comparative negligence, since the rescue doctrine continues to serve the vital purpose of establishing a causal connection between a defendant's negligence and a plaintiff rescuer's injury. *Id.* at 783.

25. In summary, the undersigned finds that CM was negligent, and that his negligence was a proximate cause of the Plaintiff's injuries. The undersigned also finds that Plaintiff was comparatively negligent in his choice of how he exited CM's vehicle after rescue personnel arrived, but that his negligence was not equal to or greater than the negligence of CM. Thus, whether a verdict is returned on behalf of the Plaintiff pursuant to "customary" negligence analysis, or whether a verdict is returned on behalf of Plaintiff pursuant to application of

5

the "rescue doctrine", the undersigned is satisfied that a verdict should be returned on behalf of plaintiff, and is so below.

26.     Turning to the issue of damages, it cannot be reasonably disputed that Plaintiff suffered a very serious injury after which he had to endure three surgeries.  Plaintiff's medical bills are very substantial, $117,157.80.  The injuries Plaintiff sustained in the matter have had permanent side effects for Plaintiff, including pain and loss of earnings as well as loss of earnings capacity.  Plaintiff's counsel has argued for a total damages award of $986,517.80.  Defense counsel avoids any extended discussion of damages in his written arguments, instead content to simply argue that his client was not negligent, and that even if he was negligent, there was no proximate cause present and/or that the Plaintiff's negligence "significantly outweighed" any alleged negligence on the part of his client.

27. The purpose of awarding damages in a tort action is to "make the plaintiff whole by compensating him or her for any injuries or losses proximately caused by the defendant's negligence." *See* Zillman, Simmons & Gregory, *Maine Tort Law*, § 19.01 at 663 (1999).   A damage award must be supported by some evidence in the record, but does not have to be proven to a mathematical certainty, only to a probability.  The Law Court has never required a wronged party to prove the damages he has suffered to a mathematical certainty, but instead has insisted only that his claimed damages "be grounded on established positive facts or on evidence from which their existence and amount may be determined to a probability." *Decesere v. Thayer*, 468 A.2d 597, 598 (Me. 1983) (quoting *Michaud v. Steckino*, 390 A.2d 524, 530 (Me. 1978)) (emphasis added).

28.     The Plaintiff is entitled to an award that fairly, reasonably, and adequately compensates him for his pain and suffering, past and future, mental and physical, as well as for his loss of health and loss due to diminished earning capacity, past and future, proximately ascribable to his injury. *Goldstein v. Sklar*, 216 A.2d 298, 308 (Me. 1966).

29.  A claim for lost earning capacity requires evidence that the injury has caused an ongoing impairment that has diminished or eliminated the plaintiff's ability to earn income. *Kaler v. Webster*, 348 A.2d 702, 703-04 (Me. 1975).

30.  Plaintiff has suffered and will in all likelihood continue to suffer pain as a result of his injury.  Dr. White's testimony, which the Court found credible, was that Plaintiff would likely always have a visible limp and "where he is is where he is going to be.  In other words, he is probably not going to get all of his strength back in that leg."

31.     Plaintiff has a modest employment history, at least in terms of earnings.  However, it cannot be reasonably argued that Plaintiff did not lose earnings as a result of this injury or that he will not continue to lose earnings as a result of this injury.

32.     Plaintiff's counsel argues that his client's lost wage/lost wage capacity claim equals $319,360.00.    Frankly, this seems excessive to the undersigned.     However, what seems even more excessive is the defense contention that Plaintiff should not be able to recover **any** damages on account of lost wages from at least October, 2012 forward because, in counsel's mind, Plaintiff "has chosen ... not to seek any form of employment."

33.     Taking all of the above into consideration, the Court awards damages to the Plaintiff as set out below:

a) Value of medical expenses incurred:          **$117,157.80**

b) Lost earnings and lost earnings capacity:     **$100,000.00**

c) Non-Economic damages:                         **$300,000.00**

**Total: $517,157.80**

34.     The undersigned finds that Plaintiff is comparatively negligent, and also finds that Plaintiff could have taken steps to mitigate his damages in terms of ceasing his smoking and taking better care of himself.

35.     Accordingly, the Court reduces the damages award pursuant to 14 M.R.S. § 156 and applicable case law to a final figure of **$465,442.00. Judgment for Plaintiff against the Defendants in the amount of $465,442.00 plus applicable interest and costs.  So Ordered.**

The Clerk is directed to incorporate this Decision and Judgment by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: 12/22/2015

BY _Robert E. Mullen_

**Robert E. Mullen, Justice**
**Maine Superior Court**