ARNOLD W. KIDDER, by his next friend,

*vs.*

FRANK W. SADLER.

Cumberland.    Opinion March 15, 1918.

*Rule in Maine as to liability for maintaining dangerous structures attractive to children.   Rule of law as to duty towards licensee, invitee or trespasser.*

Action to recover damages for negligence.    On report.

*Held:*

1.   The plaintiff, at best, was a mere licensee upon the premises of the defendant.

2.   The plaintiff has not sustained the burden of showing that the defendant did anything to wantonly injure him, or that the defendant wantonly and recklessly exposed him to danger.

3.   In a legal sense, to come under an implied invitation, as distinguished from mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be some mutuality of interests in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant.

Action on the case alleging negligence on part of defendant. Defendant filed plea of general issue.    At close of evidence case was reported to Law Court for final determination.    Judgment for defendant.

Case stated in opinion.

*William A. Connellan,* for plaintiff.

*George F. Gould, Benjamin L. Berman, and Jacob H. Berman,* for defendant.

SITTING:    CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

PHILBROOK, J.    This is an action to recover damages for alleged . negligence on the part of the defendant and comes up on report.

The defendant bought a tract of land in the suburbs of South Portland, plotted the same and engaged in the sale of lots.    In the

course of this business, by appropriate methods of advertising, he invited and requested the public to visit his land and bring their friends. During the larger part of the month of May, 1916, he was at work on the premises, preparing them for development, and on June 1 occurred the opening sale. Special free cars, upon which everybody was invited to ride, were advertised to run to the place of sale daily from Munjoy Hill and Monument Square, both in the City of Portland. On June 8 he advertised "Sadler Land Sale. A good time out of doors. F. W. S. Co. Free to all over 21 years old." Owing to the fact that the plaintiff lived in the immediate neighborhood of the land offered for sale, it does not appear that he naturally would, or in fact, did, accept this invitation to ride upon these cars in going from his home to these lands.

In the previous year, 1915, the defendant had opened another tract of land for sale in the neighborhood of these premises offered for sale in 1916. The plaintiff, a boy of the age of six and one-half years when the accident occurred, lived with his parents on one of the lots in the tract opened in 1915 During the development of the tract opened in 1916 the defendant moved thereon, from the land developed in 1915, a small portable shed, or shack, and located it about one-third of a mile from the plaintiff's home. The mother of the plaintiff testified that it was not visible from her house in its new location. The father of the plaintiff described the building as being six by eight feet in dimension, about seven and one-half feet high, from the eaves to the ground, with four corner posts resting on timbers, which he described as shoes with one end of each sniped off so they would not dig into the ground when the building was hauled from place to place, a task easily performed by one pair of horses. He further testified that there was a floor in the building which was so placed as to leave an open space between it and the ground of about two and one-half feet in height. There was a door in one end of the building and movable steps, to lead from the level of the ground to the level of the floor. From the photographs introduced in the case it appears that the sides and ends of the building were boarded down to the ground or, as the plaintiff's father stated, "it was boarded from the ground to the eaves." These boards were nailed horizontally, and those which were on the end of the building containing the door, and between the floor and the ground, were arranged on hinges to swing upward when the steps were removed, forming what was called, in the

testimony, a trap door. It was necessary to remove the steps before the trap door could be opened but, when the steps were removed, it could be easily lifted if not fastened. The plaintiff's father assisted the defendant in securing customers for the lots placed on sale and the relations between these two men were very friendly. It was claimed that the defendant stored in the cellar of the plaintiff's father certain presents which he was accustomed to take therefrom at various times, presents attractive to children, and convey them to this small shack from which they were distributed. It was claimed that the defendant allowed the plaintiff to accompany him to the shack with the presents and at least once one of the presents was given to the plaintiff. On or about the sixth of June the plaintiff went out in the company of some boys of about his own age to gather flowers and on his return trip he claims that he went to the shack and found a number of nitro-glycerine caps on the ground, about five feet from the building, which he picked up and brought home. On the ninth of June he put one of these caps in the stove, an explosion followed, and plaintiff's right hand was blown off.

We have stated the plaintiff's contentions at some length because he invokes the principle of liability for maintaining dangerous structures attractive to children, and because he is at variance with the defendant as to whether he was an invitee, licensee or trespasser on the defendant's land.

In the plaintiff's brief are to be found a large number of cases from other jurisdictions supporting the doctrine of liability for maintaining dangerous structures attractive to children, but no such citation is made of any case so decided by this court. Indeed our court has distinctly declined to adopt this doctrine although admitting that other courts have adopted it. This principle has been so recently and thoroughly discussed that it is only necessary to refer to *McMinn* v. *N. E. Tel. Co.*, 113 Maine, 519, and *Nelson* v. *Burnham-Morrill Co.*, 114 Maine, 213. We adhere to our previously expressed position upon this point.

Was the plaintiff an invitee, licensee or trespasser upon the defendant's premises at the time when he obtained the nitro-glycerine caps? Upon the answer to this question depends the degree of care for which the defendant may be held responsible.

It is not claimed that on the morning when the caps were obtained the plaintiff was on the premises by reason of any express invitation

of the defendant but the plaintiff claims an implied invitation. In a legal sense, to come under an implied invitation, as distinguished from mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged, or which he permits to be carried on there. There must be some mutuality of interests in the subject to which the visitor's business relates, although the particular thing which is the subject of the visit may not be for the benefit of the occupant. *Plummer* v. *Dill*, 156 Mass., 426; *Stanwood* v. *Clancey*, 106 Maine, 72; *Elie* v. *L. A. & W. Street Railway*, 112 Maine, 178. Plainly then this plaintiff was not an invitee. If we consider the relations between the parties and their previous conduct sufficient to warrant the finding that the plaintiff was a licensee, then the rule is well settled that the defendant owed the plaintiff no duty except the negative one not to wantonly injure him, nor wantonly and recklessly expose him to danger. *Russell* v. *M. C. R. R.*, 100 Maine, 406; *McClain* v. *Caribou National Bank*, 100 Maine, 437; *Moffatt* v. *Kenny*, 174 Mass., 311.

As we have already said, the plaintiff claims that these dangerous caps were left out upon the ground, unprotected and easily obtainable. The defendant and his witnesses stoutly deny this. One of the little boys who was with the plaintiff, in the frank manner characteristic of a boy of seven years of age, told of some one of their number seeing the shack and suggesting a visit thereto; that two of the boys took the steps away; that an attempt was made to lift up the trap door but the attempt failed because it was nailed; that the plaintiff looked under the building and first saw a pick and shovel, then saw the caps in a box and, finally, having laid down and reached under the building, got hold of the box, pulled out the caps and carried some away. Two other playmates of the plaintiff, one nine years of age and the other seven, in a naive way fully corroborated this story.

From a careful study of all the evidence we feel that the plaintiff has failed to show that the defendant did anything to wantonly injure him, or that defendant wantonly and recklessly exposed him to danger.

It becomes therefore unnecessary to discuss proximate cause and other defenses raised against the plaintiff's action.

*Judgment for defendant.*