R. G. FUELBERTH, APPELLANT, V. ROLAND SPLITTGERBER,
APPELLEE.

34 N. W. 2d 380

Filed November 5, 1948.   No. 32473.

H. D. Addison, for appellant.

Budd B. Bornhoft, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-
MORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an action by the owner of an airplane for $850
damages to said airplane while it was in the exclusive
possession of the defendant as bailee. A jury was waived.
The trial court entered judgment for defendant and dis-
missed the action.   The plaintiff appealed.

The plaintiff filed a petition in the district court al-
leging that on August 21, 1947, he was the owner of air-
planes and equipment and had for several years oper-
ated the Wayne airport at Wayne; that he rented and
hired out airplanes for compensation to licensed pilots
who desired to fly and use the same; that on said date at

about 7 p. m. the defendant rented and hired of plaintiff a J-3 Piper Cub airplane; and that defendant was at said time a licensed pilot in good standing and had taken off and landed airplanes at said airport a number of times.

Plaintiff alleged that said defendant, while in possession of said airplane as bailee, carelessly, unlawfully, wrongfully, negligently, and willfully operated said airplane and flew same into telegraph and telephone wires close to the north edge of said airport, and as a result thereof said airplane was completely demolished. He also alleged this accident was entirely due to defendant's unlawful acts and omissions, in that he drove said airplane at too low an altitude, failed to properly steer and operate it and to have it under control, but on the contrary operated said airplane at too low an altitude outside the boundaries of the airport, did not keep a proper lookout, negligently failed to land said airplane on the runway, and wrongfully flew said airplane into telegraph and telephone wires close to said airport. Plaintiff further alleged that the above negligence, wrongful acts and omissions on the part of the defendant, was the proximate cause of the accident and crash; that immediately before the accident said airplane was worth $1,000, and its salvage value thereafter was $150. Plaintiff prayed for damages in the sum of $850.

The defendant for answer to said petition admitted that plaintiff owned the airplane and rented it to defendant; admitted that said airplane was wrecked, but denied that this was due to any carelessness, negligence, wrongfulness, unlawfulness, or fault on the part of the plaintiff; and denied all other allegations of the petition. For further answer he alleged that the accident was solely and proximately caused by the careless, negligent, wrongful, and unlawful manner in which plaintiff operated his airport, contrary to the laws of the State of Nebraska and the rules of the Department of Aeronautics of Nebraska; that plaintiff maintained a nuisance as

defined in sections 3-301 and 3-302, R. S. Supp., 1945, in that he reduced the size of the landing area by maintaining such area too close to overhead wires; that he failed to maintain a 20-1 glide path to the landing strip, contrary to section 6 (b) (3) of the rules and regulations of the Department of Aeronautics of Nebraska; failed to mark said landing area with red flags or red electric lights; and failed to maintain said landing area in a safe condition. Defendant further alleged that plaintiff rented said plane to defendant at a time of day when darkness was immediately imminent, thereby assuming the risk of landing in the dark. He prayed judgment for the defendant.

The plaintiff for a reply thereto denied each and every allegation except as therein admitted. He alleged that said airport was owned by the city of Wayne and leased to plaintiff, and that he had no control over the use of any property adjoining and outside of the boundaries of the airport.

Plaintiff also alleged that defendant took off on said flight while visibility was clear and suitable for flying and that the accident occurred at about 7:50 p. m. on said evening. He further alleged that the north and south runway, from which defendant took off and attempted to land, was in good condition; that the distance from the fence on the south edge of the runway to the fence on the north edge of the runway was one-half mile; that the airplane defendant was flying could take off or land within a distance of four or five hundred feet, and that defendant had between January 14, 1947, and June 8, 1947, taken off and landed airplanes more than 100 times on said field; that he had received his student instructions at said airport, and was familiar with the adjoining land and obstructions thereon, and well knew that the north edge of said airport was the south edge of the railroad right-of-way, on which there were telephone and telegraph wires.

By written stipulation, a jury was waived, and the

case was tried to the court. The court found that the plaintiff operated the Wayne airport; that the defendant was a Wayne County youth of limited experience, having had 40 hours of flying, which included dual instruction and solo flight; that he had not flown alone at dusk; that on the evening of August 21, 1947, defendant rented the plane for an agreed rental of $8 an hour; that after a flight of eight to ten minutes defendant approached the airport from the north; that in attempting to land on the runway he struck telegraph wires at a height of about 15 feet over the north end of the runway; that the plane was damaged in the sum of $850; that the relationship of the parties was one of bailment, for the mutual benefit of the parties; and that defendant, in the absence of a specific contract, was liable only for failure to exercise ordinary care.

The court found that defendant was fully aware of the presence of telegraph wires, and flags and lights could not have better apprised him of this hazard, as he had been trained to fly above these wires when approaching a landing strip. The court found that defendant circled the field and made his glide in the approved manner; that there was no proof that his speed was excessive, and his direction was perfect; and that encountering the problem of dusk with which he was not familiar, his estimate of altitude proved inaccurate and the accident resulted.

The court found that all that plaintiff was entitled to expect was the defendant's best judgment, and not perfection; that the damages sustained by plaintiff were such as could have been reasonably expected to occur; and that it was a risk of the business. The court entered judgment for the defendant and dismissed the action at the costs of plaintiff.

The plaintiff's assignments of error charge that the judgment is not sustained by the evidence and is contrary to law; that the court erred in finding defendant not guilty of any negligence; that the court erred in finding that the damages to the plane were such as could have

been reasonably expected; that the court also erred in finding that this was an unavoidable accident, and that plaintiff was guilty of contributory negligence.

The defendant testified that he had rented this plane from Marvin Nelson, an employee of the plaintiff, who was not there at the time; and that he was in the air eight or ten minutes.

The defendant had a friend with him, Del Lemke, who was not a relative but was just going for the ride. Lemke testified that they were up in the air about eight minutes, and that he did not see the railroad right-of-way, for he was not looking out of the window.

The defendant on cross-examination testified that when he started to land he was aware of where the railroad right-of-way was, but does not believe that he looked at it. He admitted that he knew the fence and the telegraph wires were there; that as he came toward the north-south runway, with the airplane pointing to the south, he attempted to put his airplane down on the first one-third of the runway; and that he knew it was impossible to land at the north edge of the runway because of the fence and wires, which he had been taught to avoid. He testified that one wheel tripped on the wire, and if he had been two feet higher he would have cleared it.

The general rules of bailment apply to aircraft as well as to automobiles for hire. See, Ambassador Airways, Inc. v. Frank, 124 Cal. App. 56, 12 P. 2d 127; Wilson v. Colonial Air Transport, 278 Mass. 420, 180 N. E. 212, 83 A. L. R. 329.

"The burden is upon the party who seeks recovery to establish upon the whole case facts and circumstances showing a breach by the opposite party of some duty under the bailment upon which a liability may be predicated. * * * If his action is to recover for the bailee's failure to exercise the required care, whereby the property became lost, destroyed, or injured, the burden is on him to prove negligence." 6 Am. Jur., Bailments, § 367, p. 445.

"When a bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee and makes him responsible for ordinary negligence." Shiman Bros. & Co. v. Nebraska Nat. Hotel Co., 146 Neb. 47, 18 N. W. 2d 551.

A bailee for hire has the duty to exercise due care to prevent damage to bailor's property, and if he fails to exercise due care he is liable for any damage resulting by reason of such failure. See Johnson v. Steinhauer, 81 Ohio App. 202, 70 N. E. 2d 483.

"In Baron Alderson's well-known definition, 'Negligence is the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do.' But, as Sir Frederick Pollock points out, we must remember that 'negligence will not be a ground of legal liability unless the party whose conduct is in question is already in a situation that brings him under the duty of taking care.' That the navigator of an aircraft is in this situation will not be doubted. When he is taxiing along an aerodrome, he is in this situation, and when he rises into the air, his duty is certainly no less; * * *." McNair, The Law of the Air, § 22, p. 49.

In a Wisconsin case, brought by the owner of an airplane to recover damages to same, sustained in alighting on a hay rake which the management of the airport had allowed to be left on the field, a judgment was entered in favor of the plaintiff, and on appeal the judgment was reversed with directions to dismiss the complaint. The accident happened on July 10, 1928, at about 8 p. m., while the sun was still shining. The hay rake was painted red, and its wheels yellow. It was readily observable 500 feet away. The court stated that the plaintiff's pilot should have continued to circle about the field until he had a sufficient lookout so that he would not collide with the hay rake, and if the pilot alighted when his vision was obscured by the rays of the sun he

was contributorily negligent as a matter of law, which so contributed to the collision as to defeat plaintiff's right to recover. Davies v. Oshkosh Airport, Inc., 214 Wis. 236, 252 N. W. 602.

We are convinced that in the case at bar the defendant was negligent in not observing that he was about to come in contact with the telegraph wires next to the railroad right-of-way.

In conclusion, we find that there is no material contradiction or dispute in the facts as set out in the bill of exceptions. The defendant had taken his training and secured his license, after making many flights from this same airfield. He was entirely familiar with the railroad right-of-way and telegraph wires on the edge of the field, and had often made a landing coming in just over them. When a pilot, under circumstances such as are presented by this record, comes down for a landing he must use ordinary care to observe the fixed objects adjoining the field and look where he is going to land. Defendant violated the elementary rules of flying by not keeping at a safe distance from the telegraph wires, which he had been taught to avoid.

The defendant's explanation of the accident is that he misjudged his altitude, although he admits that he did not notice the right-of-way, and was apparently attempting to land by his memory from former landings of the hazards that he must avoid at that end of the field.

We do not believe that the fact that he rented this plane to take a friend up on a flight some eight minutes before he crash-landed would indicate that the defendant thought that the approaching dusk made flying at that time dangerous for him.

Under the facts and the law in this case we believe that the defendant was guilty of negligence, and that the judgment of the trial court should be reversed and the action remanded for further proceedings.

REVERSED AND REMANDED.

CHAPPELL, J., dissents.