VEE BAR AIRPORT, a Corp., Appellant, v.
DE VRIES, Respondent

(43 N. W.2d 369)

(File No. 9098. Opinion filed May 29, 1950)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Plaintiff and Appellant.

**James R. Bandy,** Armour, for Defendant and Respondent.

RUDOLPH, J. Plaintiff brought this action to recover the value of an airplane. The airplane was damaged while being flown by defendant. The jury returned a verdict for the defendant and plaintiff has appealed. Plaintiff contends that the undisputed evidence discloses that defendant was negligent as a matter of law and that such negligence was the proximate cause of the damage to the airplane.

Plaintiff operated an airport near Corsica, South Dakota, and owned airplanes used to instruct those wishing to learn to fly. Defendant had taken a course of instruction at this airport and on October 15, 1947 received his private pilot's license. To obtain this license defendant was given rather a comprehensive ground course with reference to the operation and care of an airplane. He had about 16 hours of dual instruction before he took the plane out alone. After something more than 18 hours of solo time he received his private pilot's license. This license qualified him to fly a plane with passengers but not to charge for any trip. On May 13, 1948 defendant commenced a course of further instruction to obtain a commercial pilot's license, which permitted him to carry passengers for hire. On June 30, 1948, while defendant was operating a plane owned by plaintiff and in the course of his training to obtain a commercial pilot's license, the accident upon which this action is based occurred. At the time of the crash defendant was engaged in a maneuver known as elementary eights or pylons. This consisted of selecting any two ground objects a quarter of a mile to a half mile apart, and making two complete turns of 360 degrees, circling each of such objects and completing a figure eight. The expert witnesses agreed that "The object and purpose of flying around these pylons is * * * to divide your attention from the aircraft to the ground and vice versa." Defendant was instructed that in making this maneuver he should fly at 500 feet altitude, and he knew that it was not safe to get substantially below this altitude. He had been instructed to check his altimeter each time he

crossed between pylons, and that if he lost altitude on one turn he should regain it making his next turn around a pylon. Defendant also knew, and had been instructed concerning the rules and regulations of the Civil Aeronautics Administration, which provides with reference to minimum safe altitude at which an airplane may be flown, as follows:

"Minimum safe altitudes. Except when necessary for taking off and landing, aircraft shall be flown:

"(a) when over the congested areas of cities, towns, settlements, or open-air assemblies of persons, at altitudes sufficient to permit emergency landings outside such areas and in no case less than 1,000 feet above such areas, and

"(b) when elsewhere than as specified in paragraph (a), at an altitude of not less than 500 feet, except over water or areas where flying at a lower altitude will not involve hazard to persons or property on the surface."

Defendant had made seven or eight turns around the pylons and in making his last turn discovered the airplane was down to between 150 and 200 feet from the ground. Defendant testified in detail regarding his attempt to regain altitude, and there is testimony to the effect defendant followed a proper procedure. Defendant further testified that while he was in the process of attempting to regain altitude a gust of wind tipped his right wing, the controls got mushy, the plane stalled and the crash resulted. The expert testifying for defendant stated that in his opinion "* * * this irregularity in the air mass or gust contributed to this stall by increasing his bank and by affecting the flight of the aircraft." The expert also testified that had defendant been at an altitude of 500 feet he should have been able to avoid a crash, and defendant testified in substance that had events such as he experienced occurred at an altitude of 500 feet he would have been able to regain control of the plane in the air.

Appellant contends that it was negligence as a matter of law for respondent to permit the plane to descend to the altitude to which the plane descended in executing this maneuver. Respondent contends that being in training under the supervision of appellant, appellant was aware of his degree of proficiency in flying an airplane and that a

jury could reasonably find under the facts presented the loss of altitude and resulting crash was due to his lack of proficiency rather than to negligence.

■ We are of the view that appellant under whose supervision respondent was training must be charged with knowledge of respondent's proficiency in flying an airplane. Further, that any damage resulting to appellant's airplane due to respondent's lack of skill is one of the risks appellant assumes in its training program The question presented, therefore, is whether the evidence is such that it precludes a jury from finding that the accident was due to respondent's lack of skill. Of course if the evidence is in conflict, or if undisputed is such that different inferences may be drawn therefrom by reasonable men, the question is for the jury. Frequently it is difficult to distinguish between lack of skill and carelessness in exercising a possessed skill. Hall v. Hall, 63 S.D. 343, 258 N.W. 491. We believe the facts here presented are such that it was within the province of a jury to determine that this accident occurred because of lack of skill of respondent.

True, respondent had his private pilot's license and had acquired some degree of proficiency in flying an airplane, but the maneuver respondent was executing at the time of the crash was a part of his further training under appellant's supervision. A jury might find that he had not acquired perfection which appellant seems to demand. It might be that to the old experienced flier this particular maneuver was fairly simple but as we read the record a jury would be justified in finding that it was not simple to a trainee such as respondent, and that even a slight error in manipulating the controls while executing this maneuver would result in lost altitude. An expert was asked questions and answered as follows:

"Q. Let us suppose that the wheel during a turn of this size at normal cruising speed was not correctly pulled back and the pilot missed the position by a quarter of an inch. That is, he lacked one-fourth of an inch of getting it back to the point where sufficient pressure would be exerted. What would be the result? * * * A. The result would be loss of altitude. * * *

"Q. And how much altitude would you say would be lost in three quarters of a mile turn? * * * A. * * * Perhaps 200 feet."

The maneuver was designed to train the pilot to divide his "attention from the aircraft to the ground and vice versa." Respondent had been instructed to check his altimeter at each crossing, which he did. He had been instructed how and when to regain altitude should he fail to maintain the proper altitude, from which a jury might reasonably infer that the loss of altitude by a trainee was not the unusual. We do not believe, therefore, that it can be said of respondent that simply because he lost altitude he was negligent.

■ In view of the above we are of the opinion that the jury might reasonably find that respondent exercised such skill and judgment as he possessed, and that it was due to his lack of skill in operating the plane that he lost altitude in making the last turn around the pylon.

The judgment appealed from is affirmed.

All the Judges concur.