Joseph A. KUNTZ, and Joseph A. Kuntz as guardian ad litem for Ervin David Kuntz, a minor, Plaintiffs and Appellants,

v.

Samuel W. McQUADE, d/b/a McQuade Distributing Co., and the Minneapolis Brewing Company, a foreign corporation, Defendants and Respondents.

No. 7813.

Supreme Court of North Dakota.

Feb. 19, 1959.

Murray & Rosenberg, Bismarck, for appellants.

Strutz, Jansonius & Fleck, Bismarck, for respondent Samuel W. McQuade.

Cox, Pearce & Engebretson, Bismarck, for respondent, Minneapolis Brewing Co.

TEIGEN, Judge.

The plaintiff for himself and as guardian ad litem of his fourteen year old son, brought this action against the defendants for personal injuries sustained by his son as a result of the explosion of a bottle of beer. The case was tried to a jury. The jury returned a verdict in favor of the defendants dismissing the plaintiffs' cause of action. The plaintiffs moved for a new trial in the District Court which was denied, and the plaintiffs have now appealed from the order denying new trial and from the judgment. The sole question presented on appeal is whether the verdict of the jury is against the law and against the evidence.

Joseph A. Kuntz is the owner and operator of a night club located south of Mandan, North Dakota. On Saturday, July 27, 1957, after the night club was closed about midnight, the plaintiff shut off his beer cooler, and took the top covers off in order that they defrost. On Sunday morning, July 28, he returned to his night club and carried cases of beer from his storeroom and set them down near the beer cooler preparatory to filing it. At about 1:00 or 2:00 o'clock p. m. on the same day he returned to the night club with his fourteen year old son, Ervin David, and his thirteen year old daughter, Rachel, and, pursuant to his usual practice, instructed his said children to refill the beer cooler. The beer cooler is of the horizontal chest type with openings at the top and has three compartments, each having a removable cover. These covers had been removed the night before and the first thing the children did, in accordance wth the usual practice, was to remove the remaining bottles of beer from the cooler, then wipe out the collection of moisture from the interior of the cooler, then replace the bottles of beer taken out of the cooler, placing them in the bottom or floor of the cooler in a horizontal position and then laying in the new beer from the cases placed near the cooler by the father until each compartment of the cooler held a predetermined quantity. The son, Ervin David, had removed some bottles of beer from the cooler, number unknown, he had wiped out the interior of the cooler, and had placed some of the bottles of beer taken out back into the cooler, laying them on their sides. While the boy was in a standing position preparatory to reaching for another bottle of beer to place in the cooler, one of the bottles which he had placed in the cooler exploded and fragments of glass were violently thrown about, some of them striking the boy in the face and in the left eye, causing him to lose the sight of his left eye.

The plaintiffs sued the distributor and the manufacturer of the beer. The bottle of beer which exploded was a bottle of Grain Belt Beer, manufactured and bottled by the defendant, the Minneapolis Brewing Company, and distributed by the defendant, the McQuade Distributing Co.

The plaintiff, Joseph A Kuntz, testified that the beer kept in the cooler was refrigerated and was cold. There is no evidence as to the degree of temperature that it was cooled to, but he did testify that he served cold beer; that while defrosting the cooler the beer remaining in the cooler would warm and reach room temperature. The evidence does not disclose how much beer remained in the cooler when the defrost-

ing process was commenced nor does the evidence disclose how long the beer bottle which exploded may have been contained in the cooler, but it does appear that it was the practice to defrost the cooler once each week in the summertime and that on each occasion the re-filling of the cooler was done by the said children and the children testified that it was their practice, as stated above to first remove the beer contained in the cooler, wipe the moisture from the cooler, replace the beer taken out into the cooler and then to stack new beer on top.

The testimony shows that the defendant, the Minneapolis Brewing Company, manufactured and bottled the beer which exploded and shipped the beer via the Northern Pacific Railway to the defendant, McQuade Distributing Company at Bismarck, North Dakota, where it was stored for periods not to exceed eighteen or twenty days due to their rotation of stock policy and delivered by the defendant, McQuade Distributing Company to their customers, including the plaintiff's night club, by truck. As previously stated, it is not known when the particular bottle of beer in question was delivered. However, evidence was introduced to show that the McQuade Distributing Company sold and delivered Grain Belt Beer to the plaintiff, Kuntz, on July 22, and 9, June 26 and 11, on May 28, 24, and 15, and on April 30, and 17, 1957, and the evidence establishes that there were other sales prior thereto. There is no evidence indicating in which sale or delivery the particular bottle of beer in question was delivered.

The evidence does not disclose the cause of the explosion. True, the explosion did occur but whether it was caused by a faulty bottle or faulty contents or both is not shown. The plaintiffs put forth no theory of causation but rely on the doctrine of res ipsa loquitur.

The court instructed the jury on the doctrine of res ipsa loquitur as follows:

"The doctrine of res ipsa loquitur applies to this case, which means that the accident itself and the surrounding circumstances may afford sufficient evidence of negligence to permit and allow you to draw such an inference unless you find there has been a satisfactory explanation of the occurrence by the defendants. You are instructed under this doctrine that if you find from the greater weight or preponderance of the evidence that the defendants had exclusive control of the instrumentality causing the harm which the plaintiffs claim here was caused, and if you further find that the accident claimed is of the type or kind that ordinarily would not have occurred had those having such control of the instrumentality exercised the proper care, then you may infer from the accident and the surrounding circumstances that there was negligence on the part of the defendants, unless the defendants have offered a satisfactory explanation of the occurrence. The control which would warrant you in drawing an inference of negligence need not necessarily be control at the time of the accident, but may be control at the time of the negligent act or omission, if any, which subsequently resulted in an injury. The control that the defendants exercised would carry over to the time of the occurrence if the instrumentality causing the harm were not improperly used, touched or interfered with and used only in the normal manner in which it is intended by the defendant to be used. The plaintiffs must also prove that they handled the instrumentality (bottle) carefully and that the injury was not caused by any voluntary action by the plaintiff."

This instruction was given verbatim as requested by the plaintiffs.

The jury was, therefore, permitted to infer from the fact of the explosion, with its background, that there was negligence

on the part of the defendants, but the jury declined to do so, or if they did so infer, that they further found that the plaintiffs had been negligent.

The instruction requested by the plaintiffs and given by the court is based on the theory of permissible inference of negligence, not a presumption. This court need not pass in this case upon the question of whether the doctrine of res ipsa loquitur gives rise to a permissible inference of negligence or a presumption for the reason that plaintiffs by their own acts tried the case on the theory of inference as was shown by their requested instruction. Counsel on both sides tried the case on this theory. Therefore such theory must prevail in this court and the questions presented on the appeal determined in accordance therewith. Casey v. First Bank of Nome, 20 N.D. 211, 126 N.W. 1011.

These instructions were not challenged by specifications of error, they became the law of the case, and on appeal from order denying motion for new trial and the judgment must prevail in this court: Montana-Dakota Utilities Co. v. Culver, N.D., 80 N.W.2d 541; McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Cochrane v. National Elevator Company, 20 N. D. 169, 127 N.W. 725, 89 C.J.S. Trial § 510.

There was no request for additional instruction by the appellant. The only question for review, therefore, is whether, under the instructions as given, the evidence is sufficient to justify the verdict. Grant v. Powers Dry Goods Co., 23 S.D. 195, 121 N.W. 95.

A motion for a new trial upon the ground of insufficiency of the evidence is directed primarily to the sound discretion of the trial court. Haser v. Pape, N.D., 50 N.W.2d 240; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Haslam v. Babcock, 71 N.D. 363, 1 N.W.2d 335; Baird v. Clooten, 60 N.D. 699, 236 N.W. 356; Martin v.

Parkins, 55 N.D. 339, 213 N.W. 574; Kohler v. Stephens, 74 N.D. 655, 24 N.W. 2d 64.

The learned trial Judge in his memorandum decision denying motion for a new trial in part stated:

"Looking at this evidence in the light most favorable to the defendants, can it be said that the jury was wrong in inferring negligence on the part of the plaintiff as the proximate cause of the accident? It seems to the Court that the testimony as a whole concerning the conduct of the place of business and the method of handling this beer could reasonably create an inference in the minds of the jury of negligence on the part of the plaintiff. At least it must be said that there is no more probability that the accident was caused by negligence on the part of defendants than on the part of the plaintiff, and in such case the plaintiff has failed to sustain the burden of proof.

"There was no expert evidence offered by any party as to the proper method of handling beer in shipment, in storage, in delivery, or while it was being handled and disposed of in a beer tavern. Whether it makes any difference that the beer taken out of the coolers by the children and replaced afterwards reached a temperature of 70, 80 or 90 degrees; whether Mr. Kuntz' method of storage of the beer previous to its being brought into the barroom was proper; whether his system or lack of system as testified to in the rotation of the beer and the care in using the old first; whether allowing the old beer taken out of the cooler before refilling to attain a room temperature; and whether such temperature could have anything to do with the accident or not is not explained and is left to the common sense of the jury."

We have carefully examined the evidence in the light of the theory of the law of the

case as established by the parties and the court and find it was amply sufficient to sustain the verdict.

■ The court's action upon an application for a new trial upon the ground of the insufficiency of the evidence to justify the verdict will not be disturbed upon appeal unless abuse of discretion is shown. Haser v. Pape, N.D., 50 N.W.2d 240; Farmers' Elevator Co. v. Fristad, 52 N.D. 497, 203 N.W. 675; Johnson v. Patterson, 67 N.D. 132, 270 N.W. 97; Olsen v. Wetzstein, 55 N.D. 794, 215 N.W. 280.

■■ The plaintiffs had the burden of proof and while the doctrine of res ipsa loquitur gave them an assist it was not conclusive on the jury. No abuse of discretion is shown or found on the part of the trial court in denying the motion for a new trial. The jury refused to draw the inference permitted them by the instruction given as requested by the plaintiffs. That is the end of the matter. Weggeman v. Seven-Up Bottling Co., 5 Wis.2d 503, 93 N.W.2d 467.

The order denying the motion for new trial and the judgment are affirmed.

SATHRE, C. J., and BURKE and MORRIS, JJ., concur.