**PORTLAND FLYING SERVICE, INC.**

v.

**Maynard B. SMITH.**

Supreme Judicial Court of Maine.

March 15, 1967.

Berman, Berman, Wernick & Flaherty, by Theodore H. Kurtz, Portland, for plaintiff.

Mahoney, Desmond, Robinson & Mahoney, by Lawrence P. Mahoney, Portland, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

WEBBER, Justice.

The plaintiff was owner of a small airplane which was hired by the defendant, a student pilot who was receiving instruction from an instructor employed by plaintiff. While under the control of the defendant the plane was involved in an accident for which property damages are sought in this action. Plaintiff appeals from the direction of a verdict for the defendant.

The facts are not in dispute and may be related as follows. Prior to the day of the accident the defendant had had about twenty hours of flying experience, involving both "dual" operation in company with his instructor and "solo" flying. His practice flying had been done at "Port of Maine", a small airport having a single runway of turf and dirt which was "subject to soft spots in the spring when frost is coming out of the ground." According to his instructor, his training was at the stage at which "he was up to the point of leaving the traffic pattern, branching out, going beyond the local pattern, in other words, he was about to spread his wings. * * * He was qualified to fly solo within a restricted area * * * not indiscriminately." On the day in question the defendant, accompanied by his instructor, successfully accomplished two "touch and go" landings by which is meant, as the name suggests, making a normal landing and then by applying the power making an immediate takeoff, thus avoiding the waste of time involved in taxiing back for a long takeoff run. After this practice, the instructor permitted the defendant to fly "solo", suggesting that he familiarize himself "with the condition and the wind at that time, * * * leave the pattern, fly away from the field, climb in altitude above the traffic pattern, which is up to 2,000 feet, and go away from the field and break up the monotony of the traffic pattern *and get the advantage of solo*." (Emphasis supplied). Pursuant to this permission and these instructions the defendant flew over a location known as Stovers Field in Pownal which had a short sod or grass runway and was identifiable as a landing field by the presence of a hangar and "wind-sock". The defendant made passes over the field and observed it from the air. He observed the landing surface and surroundings. He saw a gulley which he concluded would provide "excellent drainage" there. The field "appeared to (him) to be all right to make a touch and go landing." He then brought his plane in to land and in fact did successfully land the two wheels under the wings. The plane then proceeded forward on the runway in this manner. When he set the nose wheel down or after he had done so, the "plane nosed over." The evidence offers no further explanation of the fact that the "plane nosed over" but counsel on both sides proceeded on the assumption, as did the justice below, that the plane encountered a "soft spot" in the runway. In discussion of the defendant's motion for a directed verdict, counsel for defendant stated in part: "There is no evidence that he knew or should have known *that there was a soft spot* on Stover (field) *which, on all the evidence, was the only cause of the accident which resulted.*" (Emphasis ours) And the plaintiff's counsel, likewise, stated: "What happened was definitely his foreseeable risk and because of what happened, an accident *where he hit a soft spot in the runway,* was exactly one of the reasons why it was imprudent for him to attempt a landing on the field with which he was as a student pilot totally unfamiliar." (Emphasis ours) In summation of the evidence preliminary to his decision upon the motion, the court included

the following: *"He struck a soft spot in the runway and nosed over."* (Emphasis ours) In short, the plaintiff cannot now complain if the motion was disposed of on the factual theory accepted by all concerned that the only possible inference to be drawn from the evidence was that the presence of such a "soft spot" caused the accident.

■ We find totally lacking any evidence of negligence on the part of the defendant. We are not dealing with any contention that the defendant had exceeded the scope of his permitted use of the plane. He had been authorized and directed to leave the pattern and practice "solo" flying. He had completed about 10 to 12 hours of solo flying which necessarily involved numerous practice landings. He had not been directed not to attempt such landings on any field other than "Port of Maine". He had had experience as recently as the same day in making such landings on a sod or grass runway and had neither encountered nor observed any "soft spots". There is no evidence that the "soft spot" which it is agreed caused this accident was visible to or should have been observed by the pilot, or in fact that the runway presented any appearance other than that of a firm and supportive surface. There is nothing to suggest that this particular accident could or would not have as readily occurred if the defendant had been an experienced pilot in the exercise of due care. Nor is there anything to suggest that the defendant's "touch and go" landing was not made carefully or properly or that it would not have been entirely successful if it had not been for the presence of a concealed and unforeseeable hazard. In short, the evidence discloses no lack of ordinary care in the operation of this plane. It was exactly upon this theory of the law as applied to this posture of the evidence that the justice below directed a verdict for the defendant.

■ The learned counsel for the plaintiff, however, now and for the first time advances a very different theory. He points out that the plaintiff, having shown a bailment and a return of the plane to the owner in damaged condition, was entitled to the aid of a presumption that the defendant bailee was negligent. For this proposition he properly relies on Northeast Aviation Co. v. Rozzi (1949) 144 Me. 47, 64 A.2d 26. He then argues that under the doctrine of Hinds v. John Hancock Mutual Life Ins Co. (1959) 155 Me. 349, 364, 155 A.2d 721, 730, 85 A.L.R.2d 703 as to the use of rebuttable presumptions, the plaintiff was entitled to a jury determination as to the credibility of the explanation offered by the defendant. He contends that if the defendant's account of the factual events did not satisfy the jury that the non-existence of facts pointing to negligence was as probable as their existence, the presumption would not disappear but would persist and justify a verdict for the plaintiff. This would certainly be true under ordinary circumstances but we are satisfied that the theory upon which this case was tried and presented to the court below upon consideration of the motion for directed verdict precludes such a result.

As already noted this new rationale for reaching jury determination was never submitted or even suggested to the court below. The "presumption" theory appears to be an afterthought as it was not even included in the plaintiff's main brief. It first appeared in plaintiff's reply brief which is designed for rebuttal—and it was advanced in oral argument before this court. We think the argument now presented stands in conflict with the entire theory relied upon below and upon which the presiding justice based his consideration and determination. Under these circumstances it must be treated as having been waived.

■ Even if this were not so, however, the theory would not be tenable under the peculiar circumstances of this case. The plaintiff having proved the bailment and the return of damaged personal property did not see fit to rest and rely on his pre-

sumption but elected to go forward with evidence by calling the defendant as his witness. In doing so the plaintiff clearly intended to elicit facts which would prove negligence and he intended that a *truthful* account of the events leading to the accident, if he was successful in obtaining such an account from the defendant, should be accepted and believed by the factfinder. It is not uncommon for a party to supply evidence of an essential part of his case by calling the opposite party as the best or only available source of information. For example, this is frequently the means employed by a plaintiff who must prove agency. In calling the opposite party as his witness, the plaintiff was protected against the risks inherent in hostility and interest in the outcome by the provisions of Rule 43(b). The Rule afforded him the right of cross-examination and of impeachment and contradiction. In the instant case, however, the plaintiff elicited without difficulty from the defendant a version of the facts which was patently plaintiff's own. Proceeding, as was his right, by means of leading questions, he was able to introduce the following evidence:

"Q. (by Mr. Kurtz) What part of your airplane first touched ground?

A. (by defendant) My two front wheels, or the two wheels that would be directly under the wings.

Q. Isn't it so you rolled along the ground for a distance on those two wheels?

A. Yes.

Q. And isn't it so that you set your nose wheel down on the ground after having run along on two wheels for a while?

A. Yes.

Q. Isn't it so when you did that, your plane nosed over?

A. Yes.

Q. Isn't it so while you were rolling along running, there was nothing obstructing your view of the runway immediately in front of the plane, that is, no part of your plane obstructed the view of the runway directly in front of the plane?

A. That's right."

The plaintiff made no effort to impeach or discredit the defendant as a witness, nor was there any occasion to make such an attempt since the defendant had done no more than accept and confirm the plaintiff's understanding of the true facts as expressed by his leading questions. Moreover, the plaintiff presented and urged his legal position before the presiding justice predicated upon the truth of the very facts related by the defendant. Under these circumstances it could not be plausibly argued that the facts were any longer in dispute as between the parties and the only issue remaining was as to whether or not those facts disclosed negligence on the part of the defendant. When the plaintiff had produced the defendant's explanation as a part of his own case, *and accepted and vouched for that explanation as true*, the presumption had fulfilled its procedural function and disappeared as a matter of law. When it then further appeared that upon the undisputed facts no negligence of the defendant had been shown, the justice below could not do other than to direct a verdict.

The entry will be

Appeal denied.

DUFRESNE, Justice (dissenting).

I agree with the majority opinion that for the purpose of testing the propriety of the Court's direction of verdict in favor of the defendant in the instant case, the plaintiff cannot expect of right that we view the case as if the plaintiff were entitled to the aid of the presumption of negligence of the bailee which usually exists upon proof by the bailor of the bailment and return of the

property in damaged condition. The plaintiff did not present to the trial court the argument it now advances to the effect that the defendant's testimony which it introduced by calling the defendant as a witness under Rule 43(b) M.R.C.P. was insufficient to cause the presumption of his negligence arising out of the bailment to disappear on the grounds that the jury would be warranted in disbelieving his account of the accident. The plaintiff's sole contention was that from all the evidence in the case it was negligence for the student defendant under all the circumstances existing to attempt a "touch and go" landing at Stover field. To permit the plaintiff after trying its case upon the theory that defendant's testimony disclosed sufficient evidence of negligence to go to the jury, which theory was acted upon by the trial court, to change its position and adopt a different theory on appeal would not only be unfair to the trial court but manifestly unjust to the opposing litigant. Stoefen v. Brooks, 66 S.D. 587, 287 N.W. 330 (1939); Stufflebeme v. Jack, Tex.Civ.App., 253 S.W.2d 459 (1952); Christensen v. Harmonson, 113 Cal.App.2d 175, 247 P.2d 956 (1952).

In Kuntz v. McQuade, 95 N.W.2d 430 (N.D.1959), the court said: "The instruction requested by the plaintiffs and given by the court is based on the theory of permissible inference of negligence, not a presumption. This court need not pass in this case upon the question of whether the doctrine of res ipsa loquitur gives rise to a permissible inference of negligence or a presumption for the reason that plaintiffs by their own acts tried the case on the theory of inference as was shown by their requested instruction. Counsel on both sides tried the case on this theory. Therefore such theory must prevail in this court and the questions presented on the appeal determined in accordance therewith." Other authorities may be found in 4 C.J. Appeal and Error § 2556, p. 662, note 82; 5 C.J.S. Appeal and Error § 1464(1), p. 666, note 77.5.

However I must disagree with the majority wherein they approve the trial court and declare as a matter of law that the evidence was insufficient to support a finding of the jury that the defendant was in any way guilty of negligence that proximately caused damage to the plaintiff's plane.

We must determine the issue, having in mind the well established rule that a verdict should not be ordered for the defendant when, taking the most favorable view of the evidence, including every justifiable inference, different conclusions may be fairly drawn from the evidence by different minds. Robichaud v. St. Cyr, 150 Me. 168, 170, 107 A.2d 540; Howe v. Houde, 137 Me. 119, 15 A.2d 740; Collins v. Wellman, 129 Me. 263, 151 A. 422. In other words, does the evidence considered in the light most favorable to the plaintiff show that the jury could not properly have found for the plaintiff, because as a matter of law no negligent conduct on the part of the defendant was proven? I believe not. See also, Ward v. Merrill, 154 Me. 45, 141 A.2d 438.

Plaintiff's counsel in his opposition to defendant's motion for a directed verdict argued in part as follows:

"We say, Your Honor, on all the evidence, there is sufficient evidence on which to pose a jury question whether or not Mr. Smith was negligent in landing at this field as he did." * * *

"Because we say the evidence taken in the light most favorable to the plaintiff at this point indicates Mr. Smith was a student with approximately 20 hours flying time not yet qualified for cross country flying; he was in the stage of his training in which he was practicing so-called touch and go landings; that on the day in question he had taken several landings with his instructor and then he had taken several landings at the Port of Maine Airport without his instructor at an airport which is 2800 feet long, a level, grass-surfaced airport, and then he, fly-

ing alone, flew to Freeport. He flew to a field, as he said in his own words, with which he was totally unfamiliar before this event, made a pass over the airport, observed the field was not level. It was straight. There was a stone wall on one side, a gulley on the other. There was a state highway at one end of the runway. He has absolutely no idea how long the runway was. He is unable to give any estimate of that distance. He had a radio in his plane. He could have communicated with his home airport about the feasibility of attempting a touch and go landing at Stover. He had no way of communicating to anyone on the ground to ascertain the condition of the airport. With this background he made one pass over the field, came around and attempted a landing. What happened was definitely his foreseeable risk and because of what happened an accident where he hit a soft spot in the runway was exactly one of the reasons why it was imprudent for him to attempt a landing on the field with which he was as a student pilot totally unfamiliar. All of this, if taken in the light most favorable to the plaintiff, the Jury would be warranted in finding it was negligent of Mr. Smith to attempt a touch and go landing under all of the circumstances of this case, and therefore, we think it is a Jury question as to whether or not he was negligent." * * *

"We say the negligence was in his decision to attempt a touch and go landing at this time under all the circumstances of this case." * * *

"[t]he jury, we feel, would be definitely reasonable in concluding * * * under all the circumstances of this case, no radio contact, total unfamiliarity of the field, in the practice stage of touch and go landings, no emergency, merely wanted to go down for practice, we say under all those circumstances * * * it would be a jury question whether or not Mr. Smith was negligent in attempting a touch and go landing."

We say that plaintiff's contentions below were sufficiently broad to bring within the scope of the trial court's consideration of defendant's motion for directed verdict and of this Court's review on appeal, the defendant's travel beyond the scope of his authority. It may be that the plaintiff did not advance a theory of liability based solely upon the defendant's use of the plane beyond the scope of the charter terms, but it did not remove from the jury's consideration the factual unwarranted extension of the plaintiff's instructions in relation to the use of the plane as a circumstance to be considered with all the other circumstances existing, in determining whether the ordinarily prudent person using that degree of care that men of reasonable diligence and foresight ordinarily exercise in the operation of airplanes, would have attempted a "touch and go" landing at Stover field sometime in the morning of the 26th day of April, 1964. An interpretation of the undisputed instructions to leave the pattern and practice "solo" flying as carte blanche to attempt "touch and go" landings in any and every open field in the area, albeit an airfield such as Stover, indicates an analysis of the evidence in the best light favoring the defendant, which is not in conformity with the principles adopted by this Court. It should not have been necessary to instruct the defendant not to attempt any "touch and go" landings or any practice landings for that matter on any field other than "Port of Maine". Even though he undoubtedly had completed numerous practice landings at "Port of Maine" field in logging some 10 to 12 hours of solo flying, the defendant, so far as the evidence is concerned if taken most favorably in favor of the plaintiff, on April 26, 1964, had received his first lesson in "touch and go" landing, and his experience therein consisted in 2 such maneuvers that morning while dual flying. There is no evidence whatsoever that the defendant was instructed in any previous training trips how to land at Stover field, nor was there any suggestion of previous instructions that might have led him to believe that he could practice his flying at any field

other than "Port of Maine". The plaintiff's instructor when testifying described the "Port of Maine" field as turf and dirt, subject to soft spots in the spring when frost is coming out of the ground. Defendant's knowledge that "Port of Maine" field was free from soft spots on April 26, 1964 should not necessarily compel the ordinarily prudent person to conclude that Stover, an unknown field so far as the defendant was concerned, was a safe place upon which to land. As a matter of fact, it was not. Defendant's observations made prior to attempting his "touch and go" landing were not such as to clothe his conduct with due care as a matter of law. In the first place, the distances at which he made his observations do not appear; considering his testimony to the effect that he could not estimate the length of the field, nor the point where he touched down, nor the distance he rolled after landing, a jury could conclude that the defendant's appraisal of the landing area as a firm and supportive surface was not justified under all the circumstances existing. That this accident could or would have as readily occurred if the plane had been manned by an experienced pilot does not necessarily mean that attempting a "touch and go" landing on that day at that field under all the circumstances existing would not have been a negligent operation.

As it turned out, Stover field was unsafe for either landing, or practicing "touch and go" thereon. The plaintiff, it is true, had the burden to establish by a preponderance of the affirmative evidence, that negligence on the part of the defendant proximately caused the accident, and that the mere happening of the accident raises no presumption of negligence in the operation of the plane. Deojay v. Lyford, 139 Me. 234, 29 A.2d 111.

It is true also that the plaintiff under whose supervision defendant was taking lessons in aviation must be charged with knowledge of defendant's proficiency in flying an airplane and that any damage resulting to plaintiff's airplane due to defendant's lack of skill is one of the risks appellant assumes in its training program. Vee Bar Airport v. De Vries, 73 S.D. 356, 43 N.W.2d 369, 17 A.L.R.2d 909 (1950).

But plaintiff's assumption of risks incidental to the conduct which might be expected of its student defendant rests upon actual knowledge of the teacher as to the student's lack of proficiency in relation to certain culpable conduct. Jones v. O'Bryon, 254 Iowa 31, 116 N.W.2d 461, (1962).

In the instant case, the parties have tried the cause on the theory that the mishap did not result from any negligent maneuver of the plane on the part of the defendant in the making of the "touch and go" landing at Stover field, but rather on the theory as to whether or not it was negligent conduct under all the circumstances existing for the defendant to attempt "touch and go" landings at Stover field.

It is further admitted that defendant was not confronted with any emergency, that the plane was equipped with a radio communication system which would have permitted contact with the Port of Maine field for instructions either as to permission to practice "touch and go" at Stover field or information as to the safety of the field at this time of the spring season. This information was not available at Stover and the defendant was completely unfamiliar with this field which could be identified as an airfield only because of the presence of a hangar and wind-sock.

The defendant student was under a duty to protect the plane from damage and to refrain from conduct which men of reasonable vigilance and foresight might anticipate would result in injury. The rule of the common law, in the absence of statutory enactment covering the operation and management of airplanes at the time and place of an accident, obtains and that rule requires that every aviator, experienced pilot or student, shall use ordinary care commensurate with the circumstances ex-

isting not to injure the person or property of others, including the plane with which he may have been entrusted. Deojay v. Lyford, 139 Me. 234, at page 237, 29 A.2d 111, supra. Peavey v. City of Miami, 146 Fla. 629, 1 So.2d 614 (1941). See also, Falls Church Airpark Co., Inc. v. Mooney Aircraft, Inc., U.S.C.A. 5th Cir., 254 F.2d 920, 922 (1958); Fuelberth v. Splittgerber, 150 Neb. 309, 34 N.W.2d 380, 383, (1948).

As a general rule, where no emergency exists, the bailee-operator of a plane must use due care in selecting a safe place to land and the defendant in the instant case, even should we assume that he had a right to practice "touch and go" landing at other fields than at Port of Maine, had to use due care under all the circumstances existing before he attempted any "touch and go" landing practice at Stover field. His selection of Stover field for that purpose must pass the judgment of the ordinarily prudent person, otherwise he would be liable for damages to the plane for negligent selection of an unsafe field.

It is common knowledge in Maine that grassy fields remain soggy, wet and soft till late spring and sometime till late June and that their apperance from the ground or the air may not necessarily disclose their exact condition. Stover field, as it appeared to the defendant from the air, showed no evidence that it had been opened for air traffic. There was no aircraft present and no signs to indicate that the field had been used or was being used since the snows had departed. The advent of the airplane did not change the rule of the common law that one may not appropriate the land of another without the owner's consent or invitation. The defendant had no right to rely upon the presence of a hangar and windsock and infer therefrom that such airfield facilities were an invitation to him to land or practice "touch and go" landings. Even though the navigable airspace over Stover field was part of the national highway through which the defendant had a right to travel as a citizen of the United States, he did not acquire thereby any right to get off that highway at will and invade the domain of the owner of the land underneath. Mills v. Orcas Power & Light Company, 56 Wash.2d 807, 355 P.2d 781 (1960). The presence of a wind direction indicator is only indicative of the fact that the owner has properly registered the field with the Maine Aeronautics Commission. 6 M.R. S.A. § 202(6), [R.S.1954, c. 24, § 16(F)].

Furthermore, the defendant having no business to land or "touch and go" at Stover field, a non-commercial private field, could not rely upon the absence of warning signs and infer therefrom that the area was safe either for landing or "touch and go" landing practice. The law places upon the proprietors of airfields the obligation to see that the airport is safe and if it is not, to give warning of any danger of which they know or should know, only for such aircraft as is entitled to use the airport by express or implied invitation of the owner or occupant on business of mutual interest to them both, or in connection with the business of the owner or occupant which is there being carried on. Mills v. Orcas Power & Light Company, 355 P.2d 781 at 784, supra; Behnke v. City of Moberly, Mo.App., 243 S.W.2d 549 (1951).

Generally speaking, to go upon premises under an implied invitation, the visitor must go for a purpose connected with the business in which the owner or occupant is engaged or which he permits to be carried on there, and there must be some mutuality of interest in the subject to which the visitor's business relates. Patten v. Bartlett, 111 Me. 409, 89 A. 375, 49 L.R.A.,N.S., 1120; Kidder v. Sadler, 117 Me. 194, 103 A. 159. In the instant case, the defendant was not an invitee.

The only duty owed by the owner of premises to a licensee or trespasser is the negative duty not to wantonly injure him or wantonly and recklessly expose him to danger, while to an invitee, by express or implied invitation, he owes the duty of reasonable care. Bernier v. Bournakel, 152 Me. 314, 128 A.2d 846. The duty to give warn-

ing of the dangerous condition of the property lies upon the owner or occupant towards an invitee but not towards a mere licensee. Dixon v. Swift, 98 Me. 207, 56 A. 761.

Did the defendant student exercise that degree of care commensurate with the circumstances as men of reasonable diligence and foresight ordinarily exercise in the operation of airplanes in selecting Stover field to practice "touch and go" landings? A jury probably would say that he did not. The considerations culminating in such a conclusion may be listed as follows. In the first place, defendant's instructions did not comprehend by any stretch of a normal imagination that he should and could practice "touch and go" landings on any other field than at Port of Maine. These instructions are contained in the 3 succeeding paragraphs:

"Well, he was up to the point of leaving the traffic pattern, branching out, going beyond the local pattern, in other words, he was about to spread his wings. * * * *He was qualified to fly solo within a restricted area, yes, not indiscriminately."* (Emphasis mine.)

"I suggested he then fly solo, which he needed to build up some solo time * * * I suggested if he familiarized himself with the condition and the wind at that time, to leave the pattern, fly away from the field, climb in altitude above the traffic pattern, which is up to 2,000 feet and go away from the field and break up the monotony of the traffic pattern and get the advantage of solo."

"(Q. Did you give him further instructions?) A. Only that it is good practice to leave the pattern, to climb, to change compass direction, then come back in, locate yourself, let down, come in the traffic pattern. It is regular routine procedure that becomes routine after it is done frequently."

How a reasonable student could construe these instructions as authority, permissive or directory, to practice "touch and go" landings at any field, let alone at an apparent seasonal airfield like Stover, may be digestible only on the theory that the fledgling aviator suffering from spring fever enthusiasm suddenly decided upon such a caper and foolhardy venture which only his inexperience with flying could have permitted at the risk of injury to the plane and to himself. His failure to use the available means of communication with his home base either for permission or information was not only evidence of negligence, but indicative of conduct smacking of personal frolic. See Peavey v. City of Miami, supra; Ross v. Air Farms, Inc., 17 Misc.2d 151, 183 N.Y.S.2d 938. Taking into consideration the instructions received, his scanty experience with "touch and go" landings, his complete unfamiliarity with the field, the total absence of activity thereon, his status as a trespasser if he attempted landings there, and especially the fact that in the spring of the year one should anticipate that grassy fields may not have rid themselves of the frost and might present a false front to the operator of a vehicle as difficult of control on soft terrain as a plane, the defendant as a reasonable person should have at least apprehended danger to his person or the plane. The fact that the soft spots on the field may be considered a concealed defect does not grant immunity to one who in the exercise of due care should have anticipated within the range of reasonable foreseeability that a grassy field in April in Maine may conceal soft areas.

Where reasonable minds might disagree as to whether the conduct charged constitutes negligence, or whether such conduct, if negligence, has been proved, is exclusively a jury question. Sammons v. Webb, 86 Ga. App. 382, 71 S.E.2d 832 (1952).

I would sustain the appeal.